[Civ. No. 16577. Second Dist., Div. Two. Aug. 6, 1948.]

JOSEPH E. WHITLOW et al., Petitioners, v. THE SUPERIOR COURT OF VENTURA COUNTY et al., Respondents.

Marion P. Betty and Charles C. Montgomery, Jr., for Petitioners.

William A. Freeman and M. Arthur Waite for Respondents.

MOORE, P. J. — An alternative writ of prohibition was granted against respondent court's further proceeding with an investigation of an accusation which had been made by petitioner Townsend concerning the alteration of a transcript of the evidence theretofore taken in the case of *Martin* v. *Whitlow*, No. 31280, in the same court. Upon the petition, the demurrer and answer this court is now to determine whether such writ should be made peremptory.

### ORIGIN OF THE PROCEEDING

In 1946, one Lena Martin, a daughter of petitioner Hattie Townsend, had caused her child to undergo a tonsilectomy at the hands of petitioner Whitlow. At some point in the course of the operation the child allegedly received serious burns. Dissatisfied with the results, Mrs. Martin determined to employ an attorney to investigate her rights with reference to

such injuries. Acting upon the recommendation of her land-lady she employed Attorney Hollingsworth who had not seen or heard of Mrs. Martin prior to their consultation on January 13, 1947. The trial of the action was commenced in June, 1947, and on the third day thereof it was settled in open court.

## MRS. MARTIN'S ATTORNEY ACCUSED BEFORE STATE BAR

So far as the record discloses nothing further was thereafter heard of the suit of *Martin* v. *Whitlow* until November 25, 1947, when petitioner Townsend addressed a letter to the State Bar Association in which she charged that while her daughter was employed in a cafe as a waitress a niece of Attorney Hollingsworth had advised Mrs. Martin that the attorney would sue the physician and "get her a sum of easy money without any court costs"; that Hollingsworth had consulted two physicians and that they would testify as to the malpractice of the defendant in treating the infant son of Mrs. Martin; that suit was instituted for the sum of $50,000. In the same letter she wrote that she had seven witnesses who had "signed testimony that Doctor Homer's testimony as given in court was altered" on the transcript of the testimony in action No. 31280 "from a negative answer to an affirmative on the vital issue at stake in the trial . . . page 28, line 5." Also, she accused Attorney Hollingsworth of having solicited her daughter to employ him to prosecute the action against Dr. Whitlow "with no court costs and a guarantee of payment."

The State Bar made its investigation of the charges filed by Mrs. Townsend, exonerated Mr. Hollingsworth and declared that there was no basis for her accusation.

## HER COMPLAINT TO JUDGE BLACKSTOCK

Not content with the disposition of her complaint by The State Bar, on May 1, 1948, Mrs. Townsend forwarded a letter to Judge Blackstock in which she directed his attention to her charges filed with The State Bar and repeated that she had seven witnesses to prove that the testimony given by Dr. Homer had been altered in the reporter's transcript in action 31280 whereby Dr. Homer's "suspected perjury had been effaced and the record of the court was no longer true nor correct." She requested that the judge take the necessary action to correct this error; that he investigate the part played in the alteration of the records by all persons concerned, including counsel who prosecuted the action on behalf of Mrs. Martin. She admonished the judge that he had sworn to serve the

people honestly and to see that justice is done and "then you are duty bound to investigate the allegations made by seven witnesses in your court and I request a reply showing a result of your investigation and what corrective action you have taken so that your oath of office and allegiance of justice be not voided before the people."

### THE JUDGE ACTS

Following receipt of such accusation Judge Blackstock on May 7, 1948, caused the letter to be filed by the clerk of respondent court in the records thereof under the title "Hattie Townsend's Charges. Matter of Court's Investigation of Ernest Arnold, Court Reporter" and assigned to it No. 33504. Upon the same day the judge took the testimony of Court Reporter Arnold in open court respecting the alleged alteration of the transcript of the testimony in cause No. 31280 and directed the clerk to issue a subpoena for Mrs. Townsend to attend a session of respondent court on May 10, 1948, at 3 o'clock p. m. to testify as a witness in the investigation.

### MRS. TOWNSEND'S CONTUMACY

Notwithstanding the service of the subpoena upon her by the Sheriff of Ventura County, Mrs. Townsend did not appear at the time and place set for the hearing. However, an affidavit of Dr. Hanson was filed which averred that to require Mrs. Townsend to come to court to participate in the proceeding would place her life in jeopardy. Pursuant to the court's request Dr. Hanson appeared and gave his testimony concerning the woman's condition. He testified that while she suffered "kidney and heart insufficiency, yet she might improve to such extent in two weeks as to enable her to attend court and to testify if her progress should in the meantime be favorable."

Thereupon the court continued the hearing to 2 o'clock p. m. on May 24, 1948, when Mrs. Townsend again failed to appear. In her stead the affidavit of Dr. Vorbeck was presented. It averred the same pathology of her heart and kidneys and that she was physically unable to leave her bed. However, from the testimony of Dr. Vorbeck in open court the judge concluded that Mrs. Townsend could come to court and give her statement under oath.

After four witnesses had testified concerning the charges contained in the complaint, Mrs. Townsend finally appeared and was subjected to a questioning concerning the letter which

she had written to the judge. Having testified that a friend had written the letter bearing her signature, she declined five times to answer the interrogation, "What friend wrote it?" She assigned no reason other than: "My attorney will take care of it when he comes." To the inquiry as to who told her that somebody went to Mrs. Martin and asked her to go see Mr. Hollingsworth to retain him to bring the suit against Dr. Whitlow, she answered that her daughter had told her and "All I know is what she told me." After she had refused to answer two or three other questions concerning the photostats of her letter and that of the witness Chisholm on the grounds that her attorney was not present and that she was "in no condition to be pestered," the judge advised her that she was not under investigation but that she was merely a witness who had accused the reporter whom he had found to be innocent of the charges.

### DR. WHITLOW REFUSES TO TESTIFY UNLESS HIS ATTORNEY BE PRESENT

Among the five other witnesses who testified after Mrs. Townsend on May 24 was petitioner Whitlow. The pertinent questions propounded to him with his replies are in substance as follows:

"By the District Attorney: Q. Have you ever before seen this letter signed by Mrs. Townsend?

"Witness: A. I decline to testify without the advice of counsel before I testify.

"The Court: You have got to have some legal ground.

"Witness: It is my constitutional right as a citizen.

"The Court: That is not a constitutional right. This is not your investigation. You are a witness. Did your counsel advise your silence on the ground that you might incriminate yourself?

"Witness: He didn't state that as the reason in that way. He said to decline to testify upon the advice of counsel.

"Court: Your attorney knew that this proceeding was on today and that I would proceed. I told him so.

"Witness: He is in court or he could have been here.

"Court: That can't interfere with the regular procedure of this court. This matter has been on here and was continued once for two weeks. You are subpoenaed here now as a witness. There is no accusation against you that I know of. You are not on trial.

"Witness: Mr. Betty told me to challenge the jurisdiction of the court to subpoena me. He wanted to know under what act this hearing is being held.

"Court: That letter accuses the court reporter of changing his records and his stenographic notes. This court has a right to investigate such an accusation against our own official reporter.

"Witness: I will be happy to testify if I am permitted advice of my counsel.

"Court: If the court orders you to testify, you are going to testify or go to jail. If you have a legal excuse why you should not testify in this investigation, I will certainly rule your way. You have not given any legal reason yet. You are not a defendant. You are in the same category with any other witness. Now Mr. District Attorney, as long as you have to continue this proceeding until Friday, it might be better to continue the whole matter until that time and not compel Dr. Whitlow to testify now as long as he says he wants advice of counsel. That probably would be the wiser procedure. We will excuse this witness until Friday at two o'clock. Dr. Whitlow, be sure to be in court then."

Thereupon the hearing was continued to May 28 only to be halted by the issuance of the alternative writ herein.

## The Court Had Jurisdiction

Before considering the specific acts complained of by petitioners inquiry must first be made concerning their contention that the court had no jurisdiction to investigate the complaint of petitioner Townsend and to ascertain whether the offenses suggested by her complaint had been committed in Ventura County. It is a presumption that a court or a judge acting as such is exercising a lawful jurisdiction. (Code Civil Proc., § 1963, subd. 16.) But other statutes clothe the superior court and the judges thereof with definite authority for the exercise of their power.

The law requires the district attorney to "institute proceedings before a magistrate for the arrest of persons . . . reasonably suspected of public offenses." (Pol. Code, § 4153.) From the fact that the proceeding before Judge Blackstock was conducted by the District Attorney of Ventura County it must be inferred that he either instigated it or approved of the filing of the accusatory letter and the ensuing trial in which he was the chief actor. In the performance of his duty Judge Blackstock undertook to sift the charges of Mrs. Town-

send, and for that purpose caused subpoenas to be issued and served upon those persons who logically should have had knowledge of the acts specified in the letter.

It may be conceded that if an unverified complaint were presented against a person who had no connection with the court or with any adjourned or pending proceeding before it the judge might be warranted in declining to file and consider it. Ordinarily, complaints charging crime are filed in a justice or municipal court. (Pen. Code, § 811.) However, the same does not hold true as to a court reporter, who is an adjunct of the court. (*Pratt* v. *Browne,* 135 Cal. 649, 653 [67 P. 1082].) Neither does it apply to counsel who have conducted a trial or other hearing before the superior court. And the court's power does not end with the right to control ''its ministerial officers and all other persons in any manner connected with a judicial proceeding,'' but also in furtherance of justice it may ''compel the attendance of persons to testify in an action or proceeding pending therein.'' (Code Civil Proc., § 128, subds. 5, 6; § 177, subd. 3.)

From such provisions it was clearly the office and function of the superior court to entertain the complaint of Mrs. Townsend, and from the evidence of herself and available witnesses to determine what offenses had been committed. (Pen. Code, § 811.) The sufficiency of the Townsend letter as a pleading was not attacked by the court reporter, who was the only person entitled to plead to it. A witness has no right to question the form of a complaint. ▮ But, if an observation may be indulged, there was nothing lacking in the writing to constitute it the basis of an investigation as to whether a crime had been committed. The absence of a verification was not fatal. (Pen. Code, § 806; *In re Sing,* 13 Cal.App. 736, 740 [110 P. 693].) Therefore, the court was obliged to inquire into charges against its officers and attachés with respect to occurrences within the court. Also, as a magistrate it was the judge's duty to take evidence in order to determine whether one or more offenses had been committed. (Pen. Code, §§ 808, 811.)

▮ While the character of Mr. Hollingsworth as attorney had been cleared by The State Bar's inquisition, such decision was not an adjudication of the state's interest in the offenses suggested by the letter, namely: (1) that Hollingsworth and associate had actually assisted the court reporter in altering the transcript in action No. 31280 (Pen. Code, § 134); (2) that the attorneys had conspired with the reporter to

alter such transcript (Gov. Code, § 6200; Pen. Code, § 182); (3) that the same parties had suppressed, or had conspired to suppress, evidence of an act of perjury, (Pen. Code, §§ 153, 182); (4) that they had conspired to obstruct justice or to commit forgery or other crimes. (Pen. Code, §§ 132, 182; see *State* v. *Jones,* 39 N.M. 395 [48 P.2d 403, 405]; *People* v. *Horowitz,* 70 Cal.App.2d 675, 688 [161 P.2d 833]; *State* v. *Keyes,* 8 Vt. 57 [30 Am.Dec. 450]; 20 Cal.Jur. 347; 39 Am.Jur. § 6, p. 504.)

Another violation of the law was suggested by the written complaint of the witness Chisholm which accompanied Mrs. Townsend's letter, and by his testimony as to the circumstances leading to his act of signing it. A synopsis of that testimony appears on the margin hereof.* His testimony given before Judge Blackstock was such as is calculated to arouse the resentment of a judicial officer jealously alert to the public interest against the author or perpetrator of such act as that described by the witness. Such act is a crime denounced by section 650½ of the Penal Code which in effect forbids a person wrongfully to use another's name in such way as in any manner to affect the moral reputation of the person whose name is used. In view of the fact that such crimes are proper subjects of inquisition, Judge Blackstock as a magistrate had jurisdiction to proceed with the investigation of the offenses reasonably suspected and alleged in the written charges made in evident good faith by apparently responsible citizens.

In addition to the duty of the district attorney to investigate crimes suspected, under the circumstances disclosed by Mrs. Townsend's letter the judge was under obli-

---

*"'I signed the letter to the State Bar which declares that Attorney Hollingsworth of Ventura called at my home in Fillmore and solicited me to retain him to sue Dr. Whitlow.

"'It is true that one night a stranger came to my home and asked me to employ him to handle my case against Dr. Whitlow. He said his name was Hollingsworth and that his office was in the Bank of America Building in Ventura. He offered me 60 per cent of recovery if I would permit him to sue the doctor. He said that I had a good case, that it would cost me nothing and that I would lose nothing.

"'After the stranger's visit I told the doctor that I intended to sue him, but he settled my claim. Later the doctor brought this letter over to my home and asked me to sign it. Mr. Wheeler was with him. When I signed it I was in the back of an automobile and had only the light in the dome to see by. Prior to that call by the two men I had never seen this Attorney Hollingsworth. Having seen him here I know it was not he who called at my home and solicited employment. He never solicited legal business from me, never came to see me. I retract the statement in my letter to the State Bar accusing Mr. Hollingsworth.'"

gation to ascertain whether any of the parties specified was guilty of a contempt of his court. He is the guardian of the honor and the character of his court. The behavior of its officers and attachés are the perpetual objects of his judicial concern. He should exercise a reasonable prudence and industry to preserve for it an unblemished name.

### As to Dr. Whitlow

█ No good reason is found in the record why Dr. Whitlow should not have answered the questions propounded to him. The court's position was correctly stated by the judge. He would have been clearly within his rights to enforce the rule that a witness must testify frankly in any proceeding in which he is not a defendant until a question is propounded the answer to which might tend to incriminate him (*In re Lemon*, 15 Cal.App.2d 82, 89 [59 P.2d 213] ; *Ex parte Tahbel*, 46 Cal.App. 755, 758 [189 P. 804] ; *Brown* v. *Walker*, 161 U.S. 591, 596 [16 S.Ct. 644, 40 L.Ed. 819] ) or to violate some other legal right. The Constitution grants no greater liberality to him. (See Const., art. I, § 13.) █ The federal Constitution contains no inhibition against state legislation requiring a witness to testify in a proceeding conducted for the purpose of discovering whether a crime has been committed. That a witness may wish his attorney to be present is no excuse. He might name a thousand wishes and name a thousand persons he would like to have present, but he would not for any or all of them be relieved of his duty to give his testimony. Dr. Whitlow was denied no right. He was threatened with no penalty for refusing to testify if he had a legal excuse for such refusal. Not only did he have no legal excuse, but to gratify his whims or to assuage his fears the court continued the hearing to enable him to have his counsel present before proceeding further. It cannot be assumed that despite a valid argument or the statement of a legal reason for his refusal to answer Judge Blackstock would have compelled the witness to testify. █ It is a presumption that the judge will follow the law and will not unlawfully oppress a witness by compelling him to do what the law exempts him from doing. (Code Civ. Proc., § 1963, subds. 1, 15.)

The judge was both patient and generous. After vainly endeavoring to induce the witnesses to answer simple questions he postponed further hearing to enable them to have advice of counsel. The pronouncement of the court at the conclusion of Mrs. Townsend's testimony that the reporter

was innocent of her charges is not to be taken as a final decision that he was not guilty. Thereafter five other witnesses were examined and the case was continued for further proof.

■ But conceding that such statement of the judge was a final disposition of the complaint against the reporter, it was the court's right and duty to explore the several implications of the accusation.

### As to Mrs. Townsend

■ In addition to the reasons already recounted for denying petitioners' demand for a writ to prohibit "any further proceedings in said action," the activities of Mrs. Townsend deserve further comment. While she is the author of the entire affair in having made the complaint, she occupies an anomalous position. Having invoked the jurisdiction of the court to "investigate the allegations made by seven witnesses," and having demanded a reply showing the "result of such investigation and what corrective action had been taken," the misguided woman harasses the same court by the present proceeding. Her allegations are without equity and her prayer is a discredit. Having filed the complaint she should have been first to volunteer to attend court and give her testimony. Such conduct is not to be regarded with favor and warrants an estoppel of one who seeks a writ of prohibition against the court whose jurisdiction has been invoked by the petitioner. (21 C.J.S. § 108, p. 162; 50 C.J. § 56, p. 681.)

The peremptory writ is denied.

McComb, J., concurred.

Wilson, J., dissented.

Petitioner's application for a hearing by the Supreme Court was denied September 30, 1948.