[Civ. No. 17234. Second Dist., Div. One. Nov. 7, 1949.]

MARGARET M. ANTHONY, Respondent, v. MYRTLE ANTHONY, as Administratrix, etc., Appellant.

Harry C. Cogen for Appellant.

Carson B. Hubbard for Respondent.

WHITE, P. J.—Respondent is the former wife of decedent, L. Vern Anthony. They began living separate and apart September 20, 1944, and a written property settlement agreement, dated November 3, 1945, was signed by them. The agreement contained the following recital:

"WHEREAS, it is the desire of the parties hereto to make a complete and final settlement of all of their property, affect property now owned by the parties hereto, and property which may hereafter be acquired by either of them, and all rights and obligations either of the parties hereto may have one to the other for support, maintenance, alimony, attorney's fees or court costs."

The agreement stated that both parties thereto had had advice of counsel but the name of decedent's counsel was in

blank. Respondent testified that her attorney prepared the agreement.

Decedent by the agreement was to hold as his separate property a 1936 Ford sedan automobile and any United States War Savings Bonds and bank accounts in his possession or in his name.

The respondent by the agreement was to hold as her separate property two parcels of real property; all community household furniture and furnishings; a life insurance policy in the sum of $5,000 in which respondent and the minor child were named as beneficiaries, and another life insurance policy conditioned upon the change of beneficiary from respondent to L. Vern Anthony, Jr.; seven United States War Savings Bonds; and a 1940 Oldsmobile sedan. The agreement contained a further provision for the benefit of respondent upon which the present litigation is based:

■ "Second Party herewith agrees to pay to First Party thirty-five dollars ($35.00)    L.V.A. M.A. the sum of ~~forty dollars~~ ~~($40)~~ per week for the support and maintenance of First Party until such time as First Party shall remarry; said payments to begin on the *6th* day of *November*, 1945; and continue *on the 3rd* day of each week thereafter. In addition to all other payments Second Party shall pay to First Party the sum of seven hundred dollars ($700) prior to the fifteenth (15th) day of December, 1945."

The agreement also provided:

"It is further understood and agreed that the terms and provisions of this Property Settlement Agreement may be incorporated in any decree of divorce which may hereafter be obtained by either party, and enforceable by contempt proceedings if necessary."

Subsequent to the execution of the agreement and on or about January 31, 1946, respondent obtained a decree of divorce in the State of Nevada. The decree of divorce made no reference to the property settlement agreement. The agreement was not presented to the court and none of its provisions were incorporated in the decree.

Decedent made the $35 weekly payments according to the terms of the written agreement until January 7, 1947. He died January 29, 1947, and Myrtle Anthony, his widow, whom he married March 2, 1946, was appointed as administratrix of his estate. The estate was appraised at $7,569.03.

Subsequent to the date of death and within the time allowed

by law, respondent filed her creditor's claim against the estate for the sum of $35 per week from January 7, 1947, to the date of filing such claim and for such additional amount as would accrue during the lifetime of the, respondent or until she remarried. The claim was rejected by the administratrix of the estate for all amounts in excess of $140, the amount accrued from January 7, 1947, to the date of death. Respondent then filed this action on her rejected creditor's claim to recover $35 per week from the date of death for the remainder of her lifetime or until she remarried.

At the beginning of the trial, it was stipulated by both parties that respondent had remarried May 15, 1948, so the action became one to recover $35 per week from date of death to May 15, 1948. The court found for the respondent and rendered judgment for $2,515.81, being the sum of $35 per week from date of death to May 15, 1948, plus interest. Appellant has appealed from the whole of said judgment.

Appellant does not seek to set the agreement aside on the basis of fraud, collusion, undue influence or as *contra bonos mores*, nor does she contend that there is any ambiguity in the contract. She asserts that the periodic payments provided for in the agreement were intended by the parties in the nature of alimony and not as a division of property and therefore terminated on the death of the decedent. Respondent argues that a property settlement agreement which provides for periodic payments to the wife until she remarries, and which is not made a part of the divorce decree in any manner, is not subject to modification by the court in an action on the contract brought against the estate of the deceased husband, and the ordinary laws of contract should be followed.

During the trial, the court agreed with the respondent that the action being solely on the agreement itself and the appellant admitting there was no ambiguity, the evidence presented by appellant as to the nature of the periodic payment provision was inadmissible as an attempt to vary the terms of the written agreement. However, sufficient offer of proof was made for the record for purposes of review.

All of the cases cited by appellant in support of her contention are cases in which the divorce decree referred to a property settlement agreement or to a stipulation by the parties as to property division and alimony or the divorce decree alone made such provision. Inasmuch as the present action is confined to the contract alone, cases other than those involving in essence modification of divorce decrees must be considered.

"Notwithstanding the contrariety of opinion as to whether, under provisions in divorce decrees for regular periodic payments of alimony, the obligations thereunder survive the death of the husband and become binding on his estate, it is generally recognized that the husband may, under a separation agreement, provide for periodic payments during the life of the wife so as to make such payments a continuing charge on his estate after his death." (17 Am.Jur. 550.)

While it is true no intent is specifically expressed in the agreement that the periodic payments were to be binding on the husband's estate, on the other hand the condition subsequent of the respondent's remarriage could not be held to have been contemplated as an event certain to happen before the death of decedent.

We are satisfied that the agreement here in question was a binding executed contract between the parties. By it they settled their property interest upon a basis agreeable to both. It bears no relation to alimony and is to be construed according to the ordinary rules of contracts. In our opinion it continued to be a legal charge against the estate the same as any other unfilled contractual obligation of decedent at the time of death.

In the case now engaging our attention the property settlement agreement was in no sense made part of a divorce decree. While the approval of a divorce court is not required to make effective a valid contract settling property rights between married persons (*Green* v. *Green*, 66 Cal.App.2d 50, 56 [151 P.2d 679]) the distinction between the rule governing in an action other than divorce and the one applicable to such contracts when presented to a divorce court is thus stated in *Sanborn* v. *Sanborn*, 3 Cal.App.2d 437, 441, 442 [39 P.2d 830] (hearing denied by the Supreme Court): "There is a marked distinction between the rule which governs in an action, other than divorce, on a contract executed under authority of sections 158 and 159 of the Civil Code and the rule which governs such contracts when presented to a divorce court. In the former instance they are judged by the same rules as any other ordinary contracts between individuals occupying fiduciary relations, and if found to be valid are binding on the parties and are recognized and enforced by courts; while in the latter instance, because of the unlimited power vested in the divorce court to make disposition of community property and to award support, such contracts, when

pleaded and relied upon, are not binding or conclusive on the divorce court until subjected to examination of the court in the divorce action and approved. (*Moog* v. *Moog,* 203 Cal. 406 [264 P. 490].) Contracts between husband and wife under the provisions of sections 158 and 159 of the Civil Code, being authorized by law, are valid if untainted by fraud, collusion, undue influence or not *contra bonos mores,* or the like. (*Hogarty* v. *Hogarty,* 188 Cal. 625 [206 P. 79] ; *Murray* v. *Murray,* 28 Cal.App. 533 [153 P. 248].) It has never been held that to acquire and possess validity such contracts must necessarily first be approved by a divorce court. The effect of the decisions relied on by appellant is simply that, as against the power of the divorce court in the matter of disposition of community property and awarding support, such contracts have no effect or control in the divorce case until sanctioned and adopted by the court either in whole or in part. Such sanction, however, is not necessarily a prerequisite to validity of such an agreement when sued upon in an independent action to enforce its terms.''

It is fundamental that the jurisdiction of a court to modify a property settlement, even assuming that it could decide that what purported to be a property settlement agreement was meant and intended to be alimony, would be derived from its original jurisdiction in the divorce action. Here, the property settlement agreement was never made part of a divorce decree.

As pointed out by respondent in her brief: ''The action in the present case is one brought on a contract, and should not be confused with the law applicable to divorce. The question of a divorce is not involved in this litigation; therefore, the question of alimony cannot be involved in this litigation, since alimony is an order of court, and incident of divorce, and not a contract. There is no requirement that a divorce cannot be granted without a determination and settlement of the property rights of the parties and determination of their support and maintenance. A divorce is a dissolution of the contract of marriage by the judgment of a court of competent jurisdiction. Cal. Civ. Code, Sec. 90. Matters of property rights, alimony and support and maintenance are often settled in divorce actions, but none of such matters are within the issues of the pleadings of this case.''

Although an order of court for payment of alimony terminates upon the death of either of the parties, such rule is not applicable to an obligation under a contract, where perform-

ance consists simply of payment of money and where the personal representatives can sufficiently perform all the deceased could have performed. In such cases, the personal representative of the decedent is bound to fulfill and complete such a contract.

The contract pleaded by both parties in the case at bar should be ''judged by the same rules as any other ordinary contracts between individuals occupying fiduciary relations'' (*Sanborn* v. *Sanborn, supra*), and not by rules applicable to modification of divorce decrees. (See, also, *Estate of Caldwell,* 129 Cal.App. 613 [19 P.2d 9].)

The terms of the contract now before us are clear. Concededly, there is no ambiguity therein. The contract was performed according to its terms by both parties without question, up to the time of L. Vern Anthony's death, and performance may be completed simply by a payment of money. Under familiar rules, the holding of the trial court that evidence pertaining to the nature of the division of property and the value of the assets divided was not admissible was correct (Civ. Code, § 1639; Code Civ. Proc., § 1856).

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1950.