[S. F. No. 19535. In Bank. Nov. 16, 1956.]

DOROTHY A. ANDERSON, Respondent, v. MAUDIE O. MART, as Administratrix, etc., Appellant.

Johnson & Harmon and Robert H. Johnson for Appellant.

Pasquinelli, O'Connor & Panelli and Timothy A. O'Connor for Respondent.

TRAYNOR, J.—On March 12, 1948, plaintiff Dorothy A. Anderson and decedent William E. Anderson executed a property settlement agreement. On June 22, 1948, plaintiff filed an action against decedent for divorce. In her complaint she alleged jurisdictional facts, extreme cruelty, her fitness for child custody, and that she "does not have sufficient money, means or property with which to support and maintain herself and the minor child of the parties hereto, and that the sum of $60.00 per month is a reasonable and necessary sum to be allowed said plaintiff as and for the support and maintenance of said plaintiff and the minor child of the parties hereto." She alleged that "there is no community property . . . , a property settlement having been entered into by and between the parties." She prayed for a dissolution of the marriage, for custody of the child, and that "the defendant be required to pay to plaintiff the sum of $60 per month as and for the support and maintenance of said plaintiff and the minor child" and "for such other and further relief as the court deems meet and proper." There was no request that the court approve the agreement or incorporate it in its decree.

The decedent filed an answer in propria persona admitting

all allegations except the allegation of extreme cruelty and the allegations with respect to support. He made no further appearance in the action, and it was tried as a default action.

On July 26, 1948, an interlocutory decree was entered granting the divorce, awarding custody of the child to plaintiff, and ordering decedent to "pay to plaintiff the sum of $60.00 per month as and for the support and maintenance of said plaintiff and the minor child. . . ." It also decreed that the property settlement agreement "be, and the same is hereby approved and ratified, and the terms thereof are incorporated herein with the same force and effect as if set forth in full herein." Decedent did not appeal, and on October 11, 1949, a final decree of divorce was entered, incorporating the terms of the interlocutory decree. Decedent remarried, and his widow, Maudie O. Mart, who remarried after his death, is the administratrix herein.

On September 24, 1951, plaintiff and her attorney signed and delivered to decedent a stipulation entitled in the court and cause and providing that the interlocutory and final decrees "may be modified so as to provide that the defendant pay to plaintiff the sum of Fifty Dollars ($50.00) a month as and for the support and maintenance of plaintiff and the minor child of the parties hereto, and that the above-entitled court may cause to be made and entered herein its order so modifying said decrees." The stipulation was not filed, and the decrees were not modified, but thereafter decedent paid plaintiff only $50 per month. On April 5, 1952, decedent died. Plaintiff presented to the administratrix of his estate a claim for $60 per month for her life expectancy. The claim was rejected, and plaintiff brought this action.

The trial court found that the estate was indebted to plaintiff on the property settlement agreement and that the agreement was incorporated in and made a part of the decree in the divorce action and that the provision for support therein was an inseparable part of an integrated property settlement agreement and therefore entered judgment for plaintiff for $14,190 to be paid out of the funds of the estate in due course of administration. That sum was fixed by the court as the present value of $50 per month for plaintiff's life expectancy. Defendant administratrix appeals.

In their agreement plaintiff and decedent provided:

"WHEREAS, there is one (1) child the issue of said marriage of the parties hereto . . . ; and,

"WHEREAS, the parties hereto desire to avoid expense, delay, inconvenience, and litigation with respect to the settlement of their property rights and obligations; . . .

"Now, THEREFORE, in consideration of the premises, and in consideration of the mutual promises and undertakings hereinafter set forth, and intending to be legally bound, the parties hereto do mutually agree and promise as follows:

"FIRST: That . . . each party is hereby released and absolved from any and all claims and demands of the other, including all claims of either party upon the other party for support and maintenance as husband and wife, or otherwise, it being understood that this instrument is intended to settle the rights of the parties hereto in all respects, except as hereinafter provided. . . .

"SECOND: That any and all property acquired by either party from and after the date hereof shall be the sole and separate property of the party acquiring the same; and each party does hereby grant to the other party all such future acquisitions of property as the sole and separate property of the party acquiring the same.

"THIRD: That each party shall have the immediate right to dispose of or bequeath by Will his or her interests in and to any and all property belonging to him or her from and after the date hereof, and said right shall extend to all of the aforesaid future acquisitions of property as well as to all property set over to either party under this agreement.

"FOURTH: That each party does hereby waive and quitclaim any right to share in the estate of the other party, either under a Will or by the laws of succession, or by family allowance, or otherwise.

"FIFTH: That each party does hereby accept the provisions herein made for him or for her in full satisfaction of his or her right to the community property of the parties, or other property acquired after marriage by either party, and in full satisfaction of his or her right, if any, to alimony or support and maintenance. Neither party shall at any time hereafter contract any debt, charge, or liability against the property or estate of the other party, and, in the event either party shall do so, he or she will save the other party harmless and free from loss occasioned by such act."

Provisions were then made for the division of the property. Bank deposits amounting to $5,726.87 and United States War Savings bonds having an approximate maturity value of $2,500 were divided equally; decedent received the better

of two automobiles and a vacant lot, appraised in his estate at $600; and plaintiff received the home, sold later for $6,000, and furnishings.

Paragraph 15 provided: "It is understood and recognized by the parties hereto that they can control the custody of the minor child of the parties hereto only to the extent that their agreement coincides with the order which any Court of competent jurisdiction may make for the best interest of said child. Subject to such recognized premise of law, the parties hereto agree that the Wife shall have the care, custody and control of the minor child, with reasonable right of visitation vested in Husband."

Paragraph 16 provided: "Subject to approval by any Court of competent jurisdiction, Husband agrees to pay to Wife the sum of Sixty ($60.00) Dollars per month as and for the support and maintenance of Wife and the minor child of the parties hereto, commencing forthwith and continuing in a like sum each and every month thereafter."

Paragraph 18 provided in part: ". . . this agreement is intended to be, and is, a full, final and complete settlement of the property rights of the parties hereto and of all claims which either party has or might claim to have had against the other, were it not for this agreement. . . ."

Paragraph 19 provided: "This agreement can be modified, cancelled, or rescinded only by a written agreement for that purpose, executed by the parties hereto. . . ."

In *Messenger* v. *Messenger*, 46 Cal.2d 619, 628 [297 P.2d 988], we held that when "the parties have clearly expressed their 'purpose of fixing and adjusting their personal and property rights,' have provided that the provision for alimony is 'for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature,' and the wife has waived 'all right to future maintenance and support . . . , except as herein otherwise expressly provided,' the conclusion is inescapable that they have made the provisions for support and maintenance an integral and inseparable part of their property settlement agreement. With such conclusive evidence of integration, the provisions for support and maintenance or alimony would be subject to modification only if the parties expressly so provided." It is abundantly clear from the second whereas clause, the now therefore clause, and the first, fifth, and

eighteenth paragraphs quoted above, that the agreement in the present case falls squarely within the foregoing rule.

■ Defendant contends, however, that the failure of the agreement to provide for the termination of the payments on the death of decedent or remarriage of plaintiff and the provision that the payments were to be subject to the approval of the court, compel the conclusion that the provision for monthly payments was for alimony. Accordingly, she concludes that it could be modified by the court and that the obligation it imposed terminated on decedent's death. If it appeared from other provisions that separable alimony payments were intended, the omission of termination dates could be explained, as defendant contends, on the theory that the payments would terminate on the death of decedent (see *Miller* v. *Superior Court,* 9 Cal.2d 733, 737 [72 P.2d 868]; *Roberts* v. *Higgins,* 122 Cal.App. 170, 171 [9 P.2d 517]) or remarriage of plaintiff. (See Civ. Code, § 139.) The other provisions of the agreement established, however, that the provision for monthly payments was an inseparable part of the property settlement and not a provision for alimony, and at the time the agreement was executed* such payments did not terminate on the death of the husband or the remarriage of the wife unless the agreement so provided. (*Parker* v. *Parker,* 193 Cal. 478, 480-481 [225 P. 447]; *Lane* v. *Bradley,* 124 Cal.App.2d 661, 665 [268 P.2d 1092]; *Anthony* v. *Anthony,* 94 Cal.App.2d 507, 511 [211 P.2d 331]; *Hamilton* v. *Hamilton,* 94 Cal.App.2d 293, 300 [210 P.2d 750]; *Estate of Mesmer,* 94 Cal.App. 97, 103 [270 P. 732]; see *Miller* v. *Superior Court, supra,* 9 Cal.2d 733, 737; *Pearman* v. *Pearman,* 104 Cal.App.2d 250, 255 [231 P.2d 101]; *Gosnell* v. *Webb,* 66 Cal.App.2d 518, 521 [152 P.2d 463].) Under these circumstances the failure so to provide clearly indicates that the payments should not so terminate and fortifies the conclusion that a separable provision for alimony was not intended.

■ The contention that the provision that the payments were to be subject to the approval of the court establishes that

---

*In 1951 section 139 was amended to provide in part that ''Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party.'' Since the agreement in this case was executed, and the decree entered, in 1948, the effect of the 1951 amendment on the interpretation of similar agreements and decrees made after its enactment is not before us.

they were alimony is likewise without merit. Thus the parties had expressly recognized that any agreement affecting the interests of their child was subject to the approval of the court, and since the monthly payments were to be made for the support of both plaintiff and the child, it was appropriate that a provision for court approval should be included. The fact that the parties recognized that they could not by their agreement control the court's power to make orders for the support of their child in no way conflicts with their clearly expressed intention that as between themselves their agreement should be final and conclusive. (See *Puckett* v. *Puckett*, 21 Cal.2d 833, 839, 842-843 [136 P.2d 1].) That this was their understanding is further indicated by the fact that when a modification was desired by decedent and agreed to by plaintiff, it was negotiated pursuant to paragraph 19, which provided that the agreement could only be modified "by a written agreement for that purpose."

 It is contended that the provision in the fourth paragraph that "each party does hereby waive and quitclaim any right to share in the estate of the other party, either under a Will or by the laws of succession, or by family allowance, *or otherwise*," and the provision of the fifth paragraph that "Neither party shall at any time *hereafter* contract any debt, charge, or liability against the property or *estate* of the other party, and, in the event either party shall do so, he or she will save the other party harmless and free from loss occasioned by such act" establish that the payments were to terminate on decedent's death. (Emphasis added.) It is obvious that the quoted provision of the fifth paragraph is irrelevant in this respect since it refers to any debt, charge, or liability to be contracted hereafter and not to the obligations assumed in the agreement itself. It is an obligation assumed in the agreement itself that plaintiff is now seeking to enforce. It is also obvious that the fourth paragraph refers only to any rights to share in the estate not otherwise provided for in the agreement. It is similar in its broad language to the provisions of the second and third paragraphs in which each of the parties waived all rights in any of the property assigned to the other and any property to be thereafter acquired by the other. Taken together these provisions make clear that neither party should have any rights in the property or the estate of the other growing out of the marital relationship. The agreement was executed to settle and dispose of those rights in exchange for those provided in the agreement, and

manifestly the agreement would be self-stultifying if the mutual relinquishment of marital rights was so broad as to prevent the enforcement of the contractual obligations given in consideration therefor. Accordingly, since it is clear that none of these provisions was intended to prevent plaintiff from enforcing her rights under the agreement and since paragraph four makes no distinction between rights accruing before or after decedent's death, it has no bearing on the applicability of the rule that payments agreed to as an inseparable part of a property settlement do not terminate on the death of the husband.

Defendant contends that the pleadings in the divorce action did not put the property settlement agreement in issue and that since plaintiff did not pray for any relief with respect to property, the court had no power to approve the property settlement agreement and incorporate it into its decree. (See *Burtnett* v. *King,* 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333].)

Code of Civil Procedure, section 580, provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue." If under the pleadings, the allegation of plaintiff's need for an award of $60 per month for the child's and her support and her prayer therefor may reasonably be interpreted as made pursuant to the provisions of the property settlement agreement, the court, in basing its award on the agreement of the parties, did not grant relief in excess of that demanded in the complaint or inconsistent with the case made by the complaint and embraced within the issue.

The primary purpose of section 580 is to insure adequate notice to the defendant of the demands made upon him. (*Burtnett* v. *King, supra,* 33 Cal.2d 805, 811; *Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal.2d 715, 727 [285 P.2d 636].)

In the present case it is clear that decedent was given adequate notice that the award sought was that provided for in the agreement. In her complaint plaintiff alleged that there was no community property "a property settlement agreement having been entered into by and between the parties." Decedent admitted this allegation, and he was aware of the terms of the agreement. He knew that it provided for the payment of $60 per month for the support of plaintiff and the child subject to the approval of the court.

The complaint contained no allegation attacking the validity of the agreement (cf., *Smith* v. *Smith*, 40 Cal.2d 461, 464 [254 P.2d 1]), and plaintiff prayed for an order for the payment of precisely the sums agreed to therein. Under these circumstances, the reasonable interpretation of the complaint is that plaintiff was not abandoning the contract, but was seeking the support provided therein. The agreement contemplated court approval of the provision for support, and in her allegations that the payments sought were necessary and reasonable, plaintiff set forth her grounds for having the court approve them.

 Moreover, the pleadings and the findings in this action would support the judgment on the ground that decedent was liable under the terms of the contract itself even if the support provision of the agreement was not merged into the divorce decree. At the trial plaintiff sought and secured a decree awarding her support pursuant to her agreement. She has never received larger payments than the agreement provided, and she has never attempted to secure the benefits of an alimony award by seeking an increase in the amount of the payments. Had she attempted to secure the benefits of an alimony decree by attacking the jurisdiction of the court to make the support award pursuant to the agreement, she would have been estopped to attack the decree she procured. (*Whitlow* v. *Superior Court*, 87 Cal.App.2d 175, 185 [196 P.2d 590]; *Estate of Smith*, 86 Cal.App.2d 456, 470 [195 P.2d 842]; *Seymour* v. *Seymour*, 18 Cal.App.2d 481, 483-484 [64 P.2d 168]; see 1 Witkin, California Procedure, 412-413.) Since plaintiff did not secure, and under the divorce decree could not secure, anything to which she was not entitled under her agreement, defendant could raise no valid objection to its enforcement as a contract obligation.

The trial court fixed the amount of the judgment as the present value of $50 per month for plaintiff's life expectancy of approximately 24 years. The payments were ordered, however, for the support of both plaintiff and the minor child. Although the amount of the payments cannot be reduced during the minority of the child (*Puckett* v. *Puckett, supra,* 21 Cal.2d 833, 843), the obligation to pay the amount thereof attributable to the child's support terminates on his reaching his majority, and when the decree is silent on the question of allocation, the trial court may determine the allocation in subsequent proceedings. (*Hopkins* v. *Hopkins,* 46 Cal.2d 313, 315-316 [294 P.2d 1]; *Meek* v. *Meek,* 51 Cal.App.2d 492, 495,

497 [125 P.2d 117]; *Putnam* v. *Putnam,* 51 Cal.App.2d 696, 699 [125 P.2d 525].) It should have done so in this case and awarded plaintiff the present value of $50 per month for the period of the child's minority plus the present value of the amount attributable to plaintiff's support for the remainder of her life expectancy.

The judgment is reversed with directions to the trial court to redetermine the amount thereof in accord with this opinion. Each party shall bear her own costs on this appeal.

Gibson, C. J., Spence, J., and McComb, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in the result reached by the majority insofar as it holds that the minor child should not receive support from the estate of its deceased father except until it reaches its majority and that the trial court should be directed to determine the amount to be allocated to it out of the total support payments until that time. I dissent from that part of the majority opinion which holds that plaintiff, the first wife of the decedent, is entitled to receive any part of the support provided for from the estate of the decedent.

I am of the opinion that Paragraph SIXTEENTH of the agreement is, and was intended by the parties, to be severable from the balance of the agreement. Paragraph SIXTEENTH provides that "Subject to the approval by any Court of competent jurisdiction, Husband agrees to pay to Wife the sum of Sixty ($60.00) Dollars per month as and for the support and maintenance of Wife and the minor child of the parties hereto, commencing forthwith and continuing in a like sum each and every month thereafter." The property settlement division was set forth in preceding paragraphs and provided for an almost equal division of the community property of the parties. The provision for $60.00 per month was obviously not considered by the parties as equalizing the division of the property and it was made expressly subject to court approval, which the property division had not been. It seems very obvious that this case does not fall within the rule of the Messenger case (*Messenger* v. *Messenger,* 46 Cal.2d 619, 628 [297 P.2d 988]) where a majority of this court held that the alimony provision was clearly for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature. No such provision is found in the case at bar.

In plaintiff's complaint for divorce she made the following allegations: "That there is no community property the result of said marriage of the parties hereto, a property settlement agreement having been entered into by and between the parties"; and "That plaintiff does not have sufficient money, means or property with which to support and maintain herself and the minor child of the parties hereto, and that the sum of $60.00 per month is a reasonable and necessary sum to be allowed to said plaintiff as and for the support and maintenance of said plaintiff and said minor child of the parties hereto." In its interlocutory decree of divorce, the trial court, in four separate paragraphs ordered (1) that plaintiff be granted a divorce; (2) that plaintiff have the custody and control of the minor child; (3) that defendant pay to plaintiff "the sum of $60.00 per month *as and for the support and maintenance of said plaintiff and the minor child of the parties hereto,* said payments commencing forthwith and continuing in a like sum on the 23rd day of each and every month thereafter" (emphasis added); (4) that "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Property Settlement Agreement made and entered into between the parties hereto on the 12th day of March, 1948, be, and the same is hereby approved and ratified, and the terms thereof are incorporated herein with the same force and effect as if set forth in full herein." It therefore clearly appears that both the plaintiff and the court considered that the provision for monthly payments was a separate and distinct thing from the property settlement. The original complaint did not pray for court approval of the property settlement agreement and the court specifically so found in the case at bar. The complaint set forth, merely, that there was no community property because it had been theretofore divided between the parties and prayed for, on the ground of need, the sum of $60 per month as support for plaintiff and the minor child.

Paragraph FOURTH reads as follows: "*That each party does hereby waive and quitclaim any right to share in the estate of the other party, either under a Will or by the laws of succession, or by family allowance, or otherwise.*" (Emphasis added.) Paragraph FIFTH reads as follows: "That each party does hereby accept the provisions herein made for him or for her in full satisfaction of his or her right to the community property of the parties, or other property acquired after marriage by either party, and in full satisfaction of his or her right, if any, to alimony or support and maintenance.

*Neither party shall at any time hereafter contract any debt, charge, or liability against the property or estate of the other party, and, in the event either party shall do so, he or she will save the other party harmless and free from loss occasioned by such act.*" (Emphasis added.)

The provisions of the agreement relating to the division of property were incorporated by reference in paragraph SIXTH of the decree and ratified and approved by the court. The provision for the monthly payments for the support and maintenance of the plaintiff and the minor child of the parties was set forth in full in paragraph FIFTH of the decree of divorce thus indicating that the court, as well as the parties, intended the provision as something separate and apart from the property settlement provisions of the agreement. This provision was therefore merged in the judgment (*Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15]). Each party did, by the terms of the agreement, specifically waive any and all right to share in the estate of the other, which provision is inescapable proof that the support payments were not to continue after the death of the one obligated therefor. In the majority opinion it is said that "It is also obvious that the fourth paragraph refers only to any rights to share in the estate *not otherwise provided for in the agreement.*" (Emphasis added.) In so holding the majority is writing something into both the agreement and decree contrary to the intentions of the parties and the court. The court treated the support provision as something entirely separate and apart from the agreement. The property of the parties was evenly divided and plaintiff in her complaint alleged that "there is no community property" and prayed for support for herself and the child on the ground of need. It would appear that had she considered the monthly payment provision as part of the community property settlement agreement her complaint would have been differently worded. In *Parker* v. *Parker,* 193 Cal. 478, 481 [225 P. 447], it was held that provision for permanent alimony is founded upon the legal obligation which the law imposes upon the husband to support the wife, and "that obligation comes to an end upon the death of either spouse. So, regardless of the language used by a court in making a provision in its decree for the payment of alimony, that provision ceases to be effective upon the death of either spouse. But here we have a provision [based upon an agreement to pay the support during the lifetime of the wife] based upon an agreement of the parties, in effect a contract.

It is not an award of permanent alimony, but an award of a life annuity given in lieu of a division of the property of the spouses. It rests not upon the obligation which the law imposes upon a husband to support his wife, but upon the contract of the parties hereto.'' I have heretofore pointed out that a construction of the agreement as a whole (as we are bound to do) shows clearly that the monthly support payments were intended to be separate from the division of property and were not in lieu thereof; that each party waived any right in the estate of the other; that the court specifically set forth the provision for monthly payments in the decree which is now the sum and substance of the parties' rights. In *Roberts* v. *Higgins,* 122 Cal.App. 170 [9 P.2d 517], the court decree awarded support and maintenance to the wife and the appellate court held that alimony terminated on the death of either party. The conclusion appears inescapable that the provision for support insofar as it relates to the plaintiff terminated upon the death of her former husband and that she has no claim against his estate for her support after his death.

So far as the minor child of the parties is concerned a different problem is presented. We held in *Taylor* v. *George,* 34 Cal.2d 552 [212 P.2d 505], that ''In California the rule is that the obligation of a father to support his minor child which is fixed by divorce decree or property settlement agreement, does not cease upon the father's death, but survives as a charge against his estate. (*Newman* v. *Burwell,* 216 Cal. 608 [15 P.2d 511]; *Estate of Smith,* 200 Cal. 654 [254 P. 567]; *Estate of Caldwell,* 129 Cal.App. 613 [19 P.2d 9].)'' In the Newman case *supra,* the decree had provided that the father pay a certain sum monthly to plaintiff for the support of the minor child of the parties ''until further order of court.'' This court held that such an obligation continued after the death of the father and during the minority of the child. ''And rightfully so, for it is the solemn duty of every father to support his children during their minority, and if he fails to do so, every principle of justice demands that they be thus supported out of his estate.'' (Pp. 612-613.)

In view of the conclusion reached by me that the monthly support provision of the agreement and decree was intended by the court and the parties to be severable from the provisions relating to property division in the agreement and not an integrated part thereof, I would reverse the judgment with directions to the trial court to determine what portion of the monthly payment should be allocated for the support

of the child and the amount necessary to support him during his minority. It follows from what I have heretofore said that plaintiff is entitled to no part of the decedent's estate and her claim against his estate for her support should be disallowed.

SCHAUER, J., Dissenting.—I concur in the conclusion and, generally, in the discussion by Mr. Justice Carter but do not agree that the property settlement agreement was, or could be, effectively incorporated in the decree by a mere reference. (See my concurring opinion in *Flynn* v. *Flynn* (1954), 42 Cal.2d 55, 61-62 [265 P.2d 865], and my dissenting opinion in *Messenger* v. *Messenger* (1956), 46 Cal.2d 619, 637 [297 P.2d 988].)

In addition to Justice Carter's discussion it may be pointed out that the provisions of the document entitled "Property Settlement Agreement," whether considered alone or together with the allegations of plaintiff's complaint for divorce and the terms of the interlocutory and final decrees of divorce, appear to preclude the construction placed upon the agreement by the trial court and the majority of this court. Rather, in my view, the agreement, the complaint for divorce, the divorce decrees, and the conduct of plaintiff and her former husband combine to demonstrate that the monthly payments were intended to be for alimony to the wife and support of the child, and the contrary determination of the trial court herein as to the alimony payments is untenable.

The complaint for divorce alleged "That there is *no community property* the result of said marriage of the parties hereto, *a property settlement agreement having been entered into* . . . That *plaintiff does not have sufficient money, means or property* with which to *support* and maintain herself and the minor child of the parties hereto, and that . . . $60.00 per month is a reasonable and necessary sum . . . for the *support* and maintenance of said plaintiff and said minor child." (Italics added.) The complaint prayed for "$60.00, per month, for the *support* and maintenance of plaintiff and said minor child." (Italics added.) This is far from being a prayer for an order directing specific performance of a property settlement agreement, and following such prayer, the interlocutory decree ordered the husband to pay $60 a month "for the *support* and maintenance of said plaintiff and the minor child," not as specific performance of a property settlement agreement. (Italics added.)

The above quoted allegations of the complaint for divorce

and the order of the interlocutory decree are in accord with the provision of the agreement (paragraph 16) that ''Subject to the approval by any Court of competent jurisdiction, Husband agrees to pay to Wife . . . [$60] per month as and for the *support* and maintenance of Wife and the minor child.'' (Italics added.) The general provisions of paragraphs 1, 5, and 18, quoted in the majority opinion (pp. 278, 279, do not overcome the specific provision of paragraph 16 as to support.

Plaintiff's allegations in the divorce action that ''there is no community property . . ., a property settlement agreement having been entered into,'' and that ''plaintiff does not have sufficient money, means or property with which to support . . . herself . . .,'' are highly persuasive that what plaintiff sought for herself in the divorce action was alimony, as such, not specific enforcement of a property settlement agreement, as to which no issue was raised. If plaintiff were in fact seeking a decree ordering performance of a property settlement agreement she could and should have sought its approval and a decree literally incorporating it in the judgment and ordering defendant to perform its covenants.

The conduct of plaintiff in praying in the divorce action for *support* for herself and the child is consistent only with the view that the payments provided by paragraph 16 of the agreement were, as to plaintiff, for support, that is, alimony. Furthermore, plaintiff's subsequent conduct in ''stipulating'' to and accepting a reduction in the amount of the payments, although the agreement contained no provision particularly directed to a change of such amount, indicates that plaintiff as well as the former husband considered and treated the payments as alimony and support, subject to court order and not as a part of the division of property.

In these circumstances the rule quoted in the majority opinion (p. 279) from *Messenger* v. *Messenger* (1956), *supra*, 46 Cal.2d 619, 628, can have no application. Plaintiff wife did not treat the support provision of the agreement here as an ''integral and inseparable part'' of the property settlement portions of the agreement; she treated it, her former husband treated it, and in accord with their position the trial court in the divorce proceeding treated it, as an agreement for support and alimony in addition to, not as an integral part of, the settlement of their property rights.

From the foregoing conclusion that the payments decreed

to the wife are *alimony* and child support, it follows that the obligation to make such payments terminated with the death of the former husband insofar as such payments are alimony (*Miller* v. *Superior Court* (1937), 9 Cal.2d 733, 737 [72 P.2d 868]; *Parker* v. *Parker* (1924), 193 Cal. 478, 481 [225 P. 447]; *Hamilton* v. *Hamilton* (1949), 94 Cal.App.2d 293, 298 [210 P.2d 750]; *Roberts* v. *Higgins* (1932), 122 Cal.App. 170, 171 [9 P.2d 517]), although the obligation survives during the child's minority insofar as the payments are child support (*Taylor* v. *George* (1949), 34 Cal.2d 552, 556 [212 P.2d 505]; *Newman* v. *Burwell* (1932), 216 Cal. 608, 612 [15 P.2d 511]).

I would reverse the judgment with directions consistent with the foregoing views.

Shenk, J., concurred.

Appellant's petition for a rehearing was denied December 12, 1956. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.