[Civ. No. 725.   Fifth Dist.   June 16, 1967.]

NANCY JOAN BROOKS, Plaintiff and Appellant, v. MARK OLIVER ABBOTT, Defendant and Respondent.

Vizzard, Baker, Sullivan & McFarland, Allan H. McFarland and Jere N. Sullivan for Plaintiff and Appellant.

Keith E. Abbott and Milton M. Younger for Defendant and Respondent.

CONLEY, P. J.—This litigation relates to the domestic economy of a divorced couple. The appellant Nancy Joan Abbott [Brooks], and the respondent, Mark Oliver Abbott, intermarried in Bakersfield, on August 2, 1952. She secured employment while he was studying as a medical student and later working as an intern in a Manitoba hospital where he earned $142 per month. Although they had one child, they came to the parting of the ways; she sued for divorce in Bakersfield by a complaint filed January 4, 1965. An order to show cause involving child support and attorneys' fees was then secured by the wife, and this move culminated in negotiations between the parties and the execution by them of a document entitled "Marital Settlement," which was filed as plaintiff's exhibit No. 1 on June 1, 1965.

On June 3, 1965, an interlocutory decree of divorce was granted by default to Mrs. Abbott; the property settlement agreement of May 12, 1965, was specifically approved by the court and incorporated in the interlocutory decree; the trial judge ordered it filed and required the respective parties to comply with its terms and conditions. After the expiration of one year, a final decree of divorce was granted by the court, and again the property settlement agreement was approved and ordered performed.

Procedurally, the present appeal is proper as one from a special order after judgment. (Code Civ. Proc., § 963, subd. 2; *Baum* v. *Baum*, 51 Cal.2d 610 [335 P.2d 481].)

The property settlement agreement in question was obvi-

ously an integrated agreement. (*Messenger* v. *Messenger*, 46 Cal.2d 619 [297 P.2d 988] ; *Anderson* v. *Mart*, 47 Cal.2d 274 [303 P.2d 539] ; *Plumer* v. *Plumer*, 48 Cal.2d 820 [313 P.2d 549].)

As stated in *Helvern* v. *Helvern*, 139 Cal.App.2d 819, 825 [294 P.2d 482] : ''The law in this state is well settled that if support provisions have been made an inseverable part of the agreement between husband and wife to divide their property, and the court in the divorce action approves the agreement, the provisions of such agreement cannot thereafter be modified without the consent of both of the contracting parties.''

The agreement provides that the wife shall have the care, custody and control of the 10-year-old child, Nancy Joan Abbott, subject to the payment by the husband to the wife of $50 per month for the minor's support so long as the husband's gross salary is $399, or less, per month. The contract further provides for an addition to the monthly payment, if there is an increase of the husband's salary. In addition, the respondent agreed to pay for the child's medical and dental expenses and the cost of sending her to college, if she should be accepted at an accredited educational institution in the United States. The wife further acknowledged that she knew the husband was presently employed as a ''junior rotating intern at St. Boniface General Hospital, Winipeg, Manitoba, Canada,'' getting $142 Canadian dollars per month for 260 hours of work; that she was earning a salary herself; that, in consideration of the release of his interest in the community property and the assumption by him of listed debts, he would not be required to do anything further to support the wife. The husband transferred any right that he might have in the furniture, furnishings, household goods, appliances, fixtures and appurtenances, books, works of art, and other items of personal property located at 1612 Glenwood Drive, Bakersfield, the home formerly occupied by the parties, to Mrs. Abbott, excepting, however, his personal clothing, tools, technical books and firearms.

The property settlement agreement continued as follows :

'' (b) Husband hereby quitclaims all his right, title and interest in the real property known as 1612 Glenwood Drive, Bakersfield, California, the parties' prior home.

'' (c) Husband hereby agrees to be solely responsible for and to save the wife and the property hereinabove described

harmless from the following debts incurred during their marriage:

" (1) A debt of approximately $4,500 owed to Dr. Dee L. Abbott, 5900 Burke Way, Kern City, California.

" (2) A debt of approximately $500.00 owed to Mrs. Dorothy Abbott, 5900 Burke Way, Kern City, California.

" (3) A loan of $2,000 against a Continental Assurance Corporation policy in the amount of $10,000, taken on life of husband.

" (4) A loan of $75 owed to the Bank of Montreal, Canada."

Furthermore, Mr. Abbott transferred to the wife all of his interest in the 1962 Ford two-door automobile then in her possession, and it was provided that the policies on the respective lives of the parties should be continued for the benefit of the minor child. The husband further agreed to pay court costs and reasonable attorneys' fees in the then pending suit. It was agreed that the wife might retain for herself the benefit of an income tax exemption with respect to the child.

The property settlement contract further provided:

"Wife acknowledges that the provisions hereinabove made for her support and maintenance are fair, adequate and reasonable, commensurate with her needs, the husband's income and financial worth and their previous standard of living. She further acknowledges that such provisions are fully satisfactory to her and accordingly she accepts the same in lieu of and in full and final settlement and satisfaction of any and all claims and rights that she may now or hereafter have against husband for her support and maintenance and otherwise."

We now come to the gist of the controversy. At the time of the execution of the agreement as stated therein, the parties owed a debt to the respondent's father, Dr. Dee L. Abbott, of 5900 Burke Way, Kern City, which was secured by a deed of trust on the home property, turned over to the wife, located at 1612 Glenwood Drive, Bakersfield. This debt the parties had both contracted by signing a promissory note to repay it to Dr. Dee L. Abbott at the rate of $36.50, or more, on the 23rd day of each month, beginning on the 23rd day of June, 1962.

After the filing of the final decree of divorce, the appellant remarried. She also then conceived the wish to sell the house at 1612 Glenwood Drive in Bakersfield, particularly in view of

the fact that she had not recently used it as a residence. She attempted, with success, to arrange for a sale but then professed surprise by her ''discovery'' as she termed it, of the trust deed in favor of her former father-in-law, Dr. Dee Abbott, which constituted a practical prevention of a normal sale; obviously, the person desiring to buy would usually wish to secure a loan, which would be a first lien, from some banking institution in order to permit him to make the purchase. As indicated by the trial court, the respondent had performed the ''letter of the bond'' by making payments on the note at the rate of $36.50, or more, per month. And respondent took the position that he could not, and would not, pay more than the note called for per month, and, therefore, that the trust deed of his father could not be satisfied without contemporaneous payment in full in order to make the sale to the proposed purchaser upon the terms which he desired. The record shows that Dr. Dee L. Abbott said that he was in no hurry for the money, but that he would not satisfy the trust deed unless he were paid in full covering the balance of the note.

The appellant filed an order to show cause why a money judgment for the full balance due on her former father-in-law's note should not be entered against the defendant and why he should not be held in contempt of court for a refusal to hold her harmless from the obligation of the Dee L. Abbott deed.

In the affidavit executed by the former wife, she said:

''That your declarant has made demand upon defendant for payment of this sum and that he has refused and still refuses to pay said sum or hold her free and blameless thereof; that defendant had knowledge of this debt since a copy of said Final Decree of Divorce and Property Settlement Agreement have been personally served upon him prior to the date of this hearing; it is necessary that a money judgment be entered against the defendant on behalf of the plaintiff for the sum of $4500.00 to enable your declarant to collect said sum.

''That the defendant is a non-resident of the State of California and that it will be necessary to have a money judgment to forward to the State of Nevada for collection purposes thereof.

''That defendant's failure to pay said sum is willful and without just cause and he has the present ability to pay said sum, he being a practicing medical doctor in Reno, Nevada

with earnings in excess of $20,000.00 per year; that your declarant has no funds to defray the costs of litigation in this matter and that your declarant believes that a reasonable sum for the prosecution of this matter would be the sum of $500.00.''

The respondent successfully contested the contention of the appellant. After the hearing, the court made an order, accompanied by a memorandum of decision, in which he said:

''Under the terms of the agreement, which was filed in the divorce action, respondent Mark Oliver Abbott in Paragraph 5(c) agrees to be solely responsible for and to save the wife and the property hereinabove described harmless from the following debts incurred during their marriage: (1) A debt of approximately $4,500.00 owed to Dr. Dee L. Abbott.

''The uncontradictory evidence both by affidavit and testimony is the obligation to Dr. Dee L. Abbott is current. All payments have been met and there is no reason to anticipate a breach. Respondent, therefore, is not in contempt, but has complied in every respect with what he undertook to do in his agreement.

''By the same token the request to reduce the indebtedness owed to a monetary judgment is not in order. Respondent Abbott at no time agreed to discharge the debt in any manner other than the existing method of payment. He has been and is currently doing just this. The effect of his agreement in Paragraph 5(c) is simply to perform the obligation in its existing manner, and there is no agreement to permit the acceleration of the obligation or the reduction of the remaining amount due thereon to a monetary judgment.''

It will be noted that nothing was said by the court with respect to the requirement contained in the order to show cause why the defendant should not be held in contempt. One reason for this is that the counsel for appellant at the hearing in effect withdrew his contention that a penalty should be imposed on the respondent for alleged contempt. Aside from this, however, it is apparent that, in view of the holding of the court on the other branch of the motion, no contempt order could have been made, and in any event, that there is no such thing as an appeal from an order *pro* or *contra* relative to contempt (12 Cal.Jur.2d, Contempt, § 77, pp. 98-99); so we are not concerned with that angle of the order to show cause. As to attorneys' fees and costs on this order to show cause, there was no showing of the wife's necessity and this fact together with the trial court's conclusion against plaintiff on

the merits of her main contention gave ground for their denial.

The conclusions of the court:

1) that the agreement of Mark Oliver Abbott to discharge the debts of the community, including ''a debt of approximately $4500.00 owed to Dr. Dee L. Abbott,'' referred, and was limited, to the existing method of payment;

2) that the defendant had made payments as required, and there was no intimation that he would not continue to perform the obligation according to its terms;

3) that there was no agreement, express or implied, to require the acceleration of the obligation, ''or the reduction of the remaining amount due thereon to a monetary judgment,'' and

4) that there is, therefore, no right on the part of plaintiff to have substituted a specific money judgment for the balance owed on the note,

are all supported by the evidence, and the judgment of the court below cannot be attacked successfully.

The decision does not purport to regulate any other alleged right than that demanded by the appellant, namely, the substitution of a present specific money judgment for the total of the installments in the property settlement agreement. The trial court has said that no such gross substitution is proper. Nothing was said, however, about any other right which the appellant here may have as against defendant; this decision does not purport to terminate any other right which appellant may have; the determination by the trial court of appellant's sole request made in this proceeding is approved.

The order is affirmed.

Stone, J., and Gargano, J., concurred.