[L. A. No. 23276. In Bank. June 6, 1956.]

BERTHA J. MESSENGER, Appellant, v. THOMAS T. MESSENGER, Respondent.

Sidney J. W. Sharp, Herbert M. Braden and Lawrence W. Clawson for Appellant.

Daniel M. Fadenrecht for Respondent.

TRAYNOR, J.—Plaintiff and defendant were married in 1936 and separated in 1950. On January 3, 1951, they executed a property settlement agreement. Thereafter plaintiff filed a complaint for divorce, and on January 8, 1951, an interlocutory decree was granted to her on the ground of extreme cruelty. The decree approved and incorporated by reference the provisions of the agreement and expressly ordered defendant to pay $500 per month "as agreed in said property settlement agreement." The final decree was entered on January 16, 1952.

In December, 1953, plaintiff applied for an order of execution for claimed arrearages of $6,700 plus interest and secured an order to show cause why defendant should not be held in contempt for failing to make the overdue payments. Defendant then secured an order to show cause why the payments provided for in the decree should not be reduced to $300 per month. The three matters were heard together, and the trial court entered judgment reducing the monthly payments and finding that defendant was not in contempt for failure to make the overdue payments. The court also concluded that an execution should not be issued against the defendant, on the grounds that he "has no properties or monies against which such execution could be successfully levied, that the only manner in which such execution could be served would be by placing a constable in charge of the daily receipts of the defendant; and, as the defendant is a professional man, this Court finds that such an action would result in considerable discredit to the defendant; and the court further believes that, if such action were taken, that the earning ability of the defendant [as a physician and surgeon] would be reduced to such a degree that it would materially affect the ability of the defendant to pay to the plaintiff the reduced alimony as set by this Court." The court ordered that the property settlement agreement be amended to provide for the payment of $375 per month, and income tax on an income of $4,500 per year instead of $500 per month and income tax on an income of $6,000 per year. It found that the amount due plaintiff from defendant to March 10, 1954, was $5,668 and ordered defendant to pay $800 on or before that date and $50 per month in addition to the reduced alimony payments to be applied on the balance due. The issuance of execution was suspended so long as defendant made these payments, but in the event of default, an execution was to issue forthwith.

Plaintiff appeals. She contends that the provisions for monthly payments and income tax payments were an integral and inseparable part of the property settlement agreement of the parties and are therefore not subject to modification.

In their agreement the parties provided:

"WHEREAS, the parties hereto are husband and wife, and that said parties hereto have agreed to divide all property and property rights between them; and

"WHEREAS, said parties do not make any arrangement or arrangements as to any divorce proceedings by either of the

parties to this agreement, leaving the determination of such action to the Court, but make and enter into this agreement for the purpose of fixing and adjusting their personal and property rights; and

"WHEREAS, the [husband] has represented that he has fully disclosed to the [wife] all of the community property of every kind and nature, and that the same is being and has been divided as between the parties under the terms and conditions of this agreement as hereinafter set forth.

"Now THEREFORE, for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature, whether separate or community property, they hereby mutually covenant and agree, each with the other as follows, to wit:"

Paragraphs 1 and 2 then provided for a division of the property, and in the present proceeding the trial court found that plaintiff received property worth $32,850 and that defendant received property worth $31,375.

Paragraph 3 provided "That the husband agrees to pay to the wife for her care, maintenance and support, the sum of FIVE HUNDRED ($500.00) DOLLARS per month, payable monthly in advance, commencing on January 3rd, 1951, receipt of which first month's alimony is hereby acknowledged, such obligation to pay to continue until the wife dies or remarries."

Paragraph 15 provided "That the husband agrees that from date hereof he will pay to the wife a sufficient amount over and above the FIVE HUNDRED ($500.00) DOLLARS per month alimony, herein agreed to be paid, to pay the income tax, if any, to be paid by the wife on said alimony payment. . . ."

The agreement also provided that "It is further understood and agreed that the wife waives, relinquishes, abandons, and releases all of her right, title and interest in and to any and all property which is hereinbefore agreed shall be set apart to and become the property of the husband, and to any and all property of every nature which said husband now has or that he may hereafter acquire or own, and all right to future maintenance and support from or by the said husband, except as herein otherwise expressly provided, and hereby waives, relinquishes and releases all right to inherit any property whatsoever which said husband now owns or possesses or which he may hereafter own or possess, or of which he may die seized or possessed, and all property which is hereinbefore

set apart to him shall be and remain forever as between the parties hereto the separate property of the husband." A similar provision related to the husband, except that his waiver of all right to future support and maintenance was not qualified by the clause, "except - as herein otherwise expressly provided."

Plaintiff's complaint referred to the $500 per month payments as alimony and prayed that the court approve the property settlement agreement, make it part of the decree, and order defendant to pay $500 per month "for the care, maintenance and support of the plaintiff, as therein agreed." The interlocutory decree approved the agreement, made it part of the decree by reference, and expressly ordered defendant to pay $500 per month "for the care, maintenance and support of the plaintiff, as agreed in said property settlement agreement." The final decree provided that "It is further ordered and decreed that wherein said interlocutory decree makes any provision for alimony" said provision "be and the same is hereby made binding on the parties affected thereby the same as if herein set forth in full, and that wherein said interlocutory decree relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties therein declared to be entitled thereto.

"IT IS FURTHER ORDERED ADJUDGED AND DECREED, that the community property of the parties hereto is ordered divided, in accordance with the property settlement agreement approved in the Interlocutory Decree entered herein and the order for support payments as are provided for therein are hereby ratified and confirmed."

Since the final decree merely confirms the provisions of the interlocutory decree and the property settlement agreement, and since the interlocutory decree ordered that the payments be made "as agreed in said property settlement agreement," we must examine the agreement to determine whether the provisions for monthly payments and income tax payments are separable from the provisions that divide the property, or whether they are an integral and inseparable part of the division of property and therefore an inseparable part of the consideration for the property settlement. If they fall into the latter category they cannot now be modified. (*Dexter* v. *Dexter*, 42 Cal.2d 36, 40-41 [265 P.2d 873] ; *Adams* v. *Adams*, 29 Cal.2d 621, 625 [177 P.2d 265].)

█ In support of his contention that the provisions fall

within the former category defendant stresses the fact that the monthly payments for the wife's support are expressly referred to in paragraphs 1(h),[1] 3,[2] and 15[3] as alimony and have one of the principal characteristics of alimony in that they terminate if the wife dies or remarries. Similar contentions were rejected in *Dexter* v. *Dexter*, 42 Cal.2d 36, 41 [265 P.2d 873][4] and in *Fox* v. *Fox*, 42 Cal.2d 49, 52-53 [265 P.2d 881],[5] where it was pointed out that the labels adopted by

---

[1] "'It is understood and agreed as to this policy [life insurance] that if, due to financial reverses or other reasons beyond the control of the husband, it is necessary to borrow money thereon for the purpose of paying the *alimony* hereinafter agreed to be paid by the husband, but for no other purpose, the husband may borrow on said policy for the purpose of paying said *alimony*, but for no other purpose. . . .'" (Italics added.)

[2] "'That the husband agrees to pay to the wife for her care, maintenance and support, the sum of FIVE HUNDRED ($500.00) DOLLARS per month, payable monthly in advance, commencing on January 3rd, 1951, receipt of which first month's *alimony* is hereby acknowledged, such obligation to pay to continue until the wife dies or remarries.'" (Italics added.)

[3] "'That the husband agrees that from date hereof he will pay to the wife a sufficient amount over and above the FIVE HUNDRED ($500.00) DOLLARS per month *alimony*, herein agreed to be paid, to pay the income tax, if any, to be paid by the wife on said *alimony* payment. . . .'" (Italics added.)

[4] "'Plaintiff contends, however, that since the monthly payments were to terminate on her death or remarriage and were described as alimony in the prayer of her complaint, they should be so treated. She points out that if they were intended as a division of property it would have been more reasonable for the agreement to provide that they should continue until a given amount had been paid. These considerations would be more persuasive if the issue presented was whether, on the one hand, the monthy payments were solely part of a division of the community property, or, on the other hand, solely alimony. When, as in this case, however, the parties have made the provision for support and maintenance an integral part of their property settlement agreement, the monthly payments will ordinarily have a dual character. To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. [Citations.] On the other hand, to the extent that they represent a division of the community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony, and accordingly cannot be modified without changing the terms of the property settlement agreement of the parties.'"

[5] "'Plaintiff contends, however, that since the payments were labeled alimony, were to cease on her remarriage, and were subject to modification in the event of a reduction of defendant's pension, there is evidence to support the trial court's implied finding that they were solely alimony subject to modification. . . . The labels adopted by the parties are not conclusive, since the agreement must be considered as a whole. [Citations.] Moreover, as pointed out in the Dexter case, to the extent the

the parties are not conclusive and that it is not controlling that the monthly payments for support have some of the indicia of alimony.

In this case as in *Fox* v. *Fox, supra, Dexter* v. *Dexter, supra, Flynn* v. *Flynn,* 42 Cal.2d 55, 60-61 [265 P.2d 865], and *Finnegan* v. *Finnegan,* 42 Cal.2d 762, 765 [269 P.2d 873], the parties have made the provision for support an integral part of their property settlement agreement. Not only did they "enter into this agreement for the purpose of fixing and adjusting their personal and property rights" but they made the provisions for support "an inseparable part of the consideration for the property settlement" (*Dexter* v. *Dexter, supra,* at pp. 41-42) by expressly agreeing that the support and maintenance provided in paragraph 3, like the division of property provided in paragraphs 1 and 2, was "for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature, whether separate or community property. . . ."

Moreover, as in *Fox* v. *Fox, supra,* at page 52, the wife waived "all right to future maintenance and support from or by the said husband, except as herein otherwise provided," i.e., in paragraph 3. Her express promise not to seek alimony except as provided in the agreement could not "be abrogated without changing the property settlement agreement of the parties." (*Ibid.*) Similarly, since this waiver was part of the consideration for the husband's agreement to make the support payments, he likewise could not seek a modification thereof without changing the property settlement agreement of the parties. It is clear, therefore, that if the parties meant the maintenance and support provisions to be alimony separable from a division of the property they would not have included this waiver (see *Helvern* v. *Helvern,* 139 Cal.App.2d 819, 829-830 [294 P.2d 482]), for an order allowing alimony is subject to revision at any time. (*Hough* v. *Hough,* 26 Cal.2d 605, 612 [160 P.2d 15].)

In the absence of conflicting extrinsic evidence as to the meaning of the agreement, the trial court's interpretation of it is not binding on this court. (*Fox* v. *Fox,* 42 Cal. 2d 49, 52 [265 P.2d 881]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) The evidence offered and introduced in this case was concerned primarily with defendant's ability to

monthly payments are designed to discharge the obligation of support and maintenance, they will ordinarily have some of the indicia of alimony.''

pay, his various expenditures, his financial arrangements with his father, and with the money and other property the husband and wife received under the agreement. The only extrinsic evidence offered that had any bearing on the meaning of the property settlement agreement was that showing the value of the property received by the parties. Proof that defendant received the greater part of the community property would be some indication that the support provisions were in lieu of part of plaintiff's share of the community property. There are two reasons, however, why the trial court's finding that defendant did not receive the greater part of the community property does not support its conclusion that the support provisions were not part of the consideration for the division of the property and were therefore subject to modification.

■ (1.) That finding was based on a reevaluation of the accounts receivable assigned to defendant under the agreement. In the agreement the parties estimated the value of the accounts at $15,000. The trial court estimated their value at $5,000. It is obvious that for the purpose of determining the meaning of the agreement, the value that is material is the value estimated by the parties in their agreement, not the value estimated by the court three years later.

(2.) Even if the evidence had showed that when the parties made their agreement, they understood that plaintiff would receive property worth $32,850 and defendant would receive property worth $31,375, it would not support the conclusion that the payments were subject to modification. The agreement was for a "permanent and lasting division" of all their rights in separate as well as community property.

■ As stated in *Dexter* v. *Dexter,* (*supra,* at p. 43) "[A]t the time a property settlement is made, the parties may be uncertain as to which of their property is community rather than separate, and they will ordinarily not know how the court in the divorce action will find the facts or how it would, in the absence of an acceptable agreement, exercise its discretion in dividing the property and awarding alimony. The amicable adjustment of these doubtful questions with respect to the property and support and maintenance rights of the parties may alone supply sufficient consideration to support their entire agreement. [Citation.] Thus in the present case, the parties recited that they desired to settle their property and support and maintenance rights 'by friendly agreement, instead of resorting to court for said purpose.' ■ Moreover,

since plaintiff secured her divorce on the ground of extreme cruelty, had the parties not settled their rights by agreement, the court could in its discretion have awarded plaintiff all of the community property and less alimony than she received under her agreement. In such case, however, the alimony would be subject to reduction in the event of changed circumstances. ▮ Plaintiff was entitled to agree instead to an equal division of the community property in exchange for support and maintenance payments that could not be reduced. Accordingly, the fact that the community property was divided equally has no bearing on the validity of the provision of the agreement whereby both parties waived all rights to support and maintenance other than as provided therein. [Citations.]'' In the present case the very fact that the finding of the respective values was based on conflicting evidence indicates that the parties were in doubt as to the value of their property and that they meant what they said when they provided that both the division of their property and the monthly payments were ''for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature. . . .'' Moreover, in the absence of the agreement the court could have awarded plaintiff all of the community property and less alimony, and just as in the Dexter case, she was entitled to agree instead to a substantially equal division of the community property in exchange for support and maintenance payments that could not be reduced.

▮▮ When as in this case the parties have clearly expressed their ''purpose of fixing and adjusting their personal and property rights,'' have provided that the provision for alimony is ''for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature,'' and the wife has waived ''all right to future maintenance and support . . . , except as herein otherwise expressly provided,'' the conclusion is inescapable that they have made the provisions for support and maintenance an integral and inseparable part of their property settlement agreement. With such conclusive evidence of integration, the provisions for support and maintenance or alimony would be subject to modification only if the parties expressly so provided. (See *Flynn* v. *Flynn, supra,* 42 Cal. 2d 55, 61, and cases cited.) The court may not, however, ''insert what has been omitted'' (Code Civ. Proc., § 1858) and

thereby abrogate the clearly expressed agreement of the parties.

Plaintiff contends that the trial court erred in failing to find defendant in contempt of court and in conditionally suspending the issuance of a writ of execution. There was evidence that defendant had been twice married after his divorce from plaintiff, that he had no assets other than the income from his medical practice upon which an execution could be levied, and that he had suffered a partial stroke necessitating loss of time from his practice. On the basis of this evidence and evidence of defendant's income and expenditures the trial court was justified in finding that defendant, "while in arrears, is not in contempt of Court," and that "the financial obligations of said defendant have been of such a nature so as to have prevented the payment of the sum of $500.00 each and every month."

With respect to the question of execution, both parties rely on *Lohman* v. *Lohman,* 29 Cal.2d 144 [173 P.2d 657], and *Di Corpo* v. *Di Corpo,* 33 Cal.2d 195 [200 P.2d 529], dealing with the right to execution on an installment judgment under the provisions of section 681 of the Code of Civil Procedure. It was stated in the Lohman case that "Although issuance of execution upon a judgment requiring monthly payments may be denied upon equitable grounds, proof that the installments have accrued within five years[6] establishes a prima facie right to execution and the burden is cast upon the judgment debtor to establish facts justifying an order denying the writ" (29 Cal.2d at 150) and in the Di Corpo case that "Thus, upon proof by plaintiff that installments have accrued within five years, the burden was upon defendant to establish facts justifying an order recalling the writ." (33 Cal.2d at 201.) We have concluded, however, that it is unnecessary to determine whether defendant has met the burden referred to in these cases.

Prior to 1951, section 139 of the Civil Code provided that "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life or for a shorter period as the court may deem just, having regard to the circumstances of the parties respectively. . . ." An order

---

[6]Code of Civil Procedure section 681 was amended in 1955 to provide for a 10-year instead of a 5-year period.

for support payments under this section was enforceable by execution pursuant to section 1007 of the Code of Civil Procedure, which provides, "Whenever an order for the payment of a sum of money is made by a court pursuant to the provisions of this code, it may be enforced by execution in the same manner as if it were a judgment."

In 1951, however, section 139 was amended, and in addition to other changes not relevant to this proceeding, a provision was added that orders thereunder "may be enforced by the court by execution or by such other order or orders as in its discretion [the trial court] may from time to time deem necessary." Under this provision the trial court now has discretion to determine in each case whether execution is an appropriate remedy for enforcing its order. In the present case the court found on sufficient evidence that to permit the issuance and enforcement of a writ of execution would discredit defendant professionally and impair his ability to make the monthly payments and discharge the arrearages. Accordingly, it did not abuse its discretion in conditioning the issuance of execution on defendant's noncompliance with its order to discharge the arrearages in installments.

To the extent that the judgment modifies the provisions of the property settlement agreement and the interlocutory and final decree based thereon it is reversed. In all other respects the judgment is affirmed. Each side shall bear its own costs on this appeal.

Gibson, C. J., Spence, J., and McComb, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion. I do not, however, agree with the reasoning leading thereto.

I said in my dissent in *Dexter* v. *Dexter*, 42 Cal.2d 36, 46 [265 P.2d 873], that this court ". . . had an opportunity to clarify the law so that stability might be given to property settlement agreements and agreements for support and maintenance. Not only do the majority holdings in these three cases [*Fox* v. *Fox*, 42 Cal.2d 49 (265 P.2d 881); *Dexter* v. *Dexter*, 42 Cal.2d 36 (265 P.2d 873); *Flynn* v. *Flynn*, 42 Cal.2d 55 (265 P.2d 865)] not settle the law, but they add untold confusion." I said in my dissent in the Flynn case (42 Cal.2d 55, 62, 67) that the holding of the majority there was an effective trap designed to catch both wary and un-

wary attorneys who were honestly and conscientiously trying to protect their clients' interests, and that it was "absolutely impossible for attorneys to know whether this court will, years later, determine that there was an incorporation [of the agreement in the judgment of divorce], or *order* one whether or not it was intended at the time of the interlocutory decree."

The main, and most vicious, error in this and in the Fox, Dexter and Flynn cases is the holding that the agreement of the parties may now be scrutinized to determine what the parties intended when the agreement was executed—whether they intended monthly payments as an integral part of a property settlement agreement or whether they really intended such periodic payments to be alimony and therefore subject to modification later by that court or by another court. Even one later determination as to the intent of the parties is not sufficient under the holdings in these cases— if an appellate court so desires it may decide that the parties intended the payments to be one or the other, and so on *ad infinitum.*

In the case under consideration, we have the majority reversing the judgment of the trial court insofar as it modified the provisions of the "property settlement agreement." The trial court had concluded that the monthly payments provided for were alimony and therefore subject to modification. The majority here concludes that the monthly payments were an integral part of the property settlement agreement and therefore *not* subject to modification. The following statement from the majority opinion leads the way to endless litigation between these parties and others in the same situation: "In the absence of conflicting extrinsic evidence as to the meaning of the agreement, the trial court's interpretation of it is not binding on this court. (*Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881] ; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)" The error in permitting this point to be litigated and relitigated when the parties obviously intended a final and complete determination of their property rights leads to this result: The trial court here concluded that the monthly payments were alimony; the District Court of Appeal concluded that the payments were an integrated part of a property settlement agreement and this court is now also so holding. By its holding, the case is now set at large and there must be a retrial of the matter.

On the new trial, other evidence may be forthcoming which will have a bearing on what the parties intended when they entered into the agreement. If new evidence is introduced which shows that the parties thought they were providing for alimony or support and maintenance payments for the wife, the trial court may again decide that such payments were alimony and subject to modification; the District Court of Appeal might affirm the holding of the trial court, and it is highly probable that this court might again conclude that such payments were an integrated part of a property settlement agreement and again set the case at large for a new trial. This one issue has already been passed upon by the courts of this state four times—once when the divorce was granted; again by the trial court when the wife applied for an order of execution; next by the District Court of Appeal, and next, but far from last, by this court. This interminable and expensive litigation all stems from the holding of a majority of this court that the question of what the parties intended when they entered into their agreement is one of fact which may be relitigated at some future time.

I have been advised by trial judges from all over the state that they find the rules set forth in the Fox, Dexter and Flynn cases extremely difficult, if not impossible, to apply in the various situations presented to them in actions for divorce. So long as this condition exists, this court will have the added burden of endeavoring to correct the honest errors made by trial courts in this type of case. This situation could be very easily remedied if this court would formulate definite understandable rules to guide lawyers and the judges of the numerous superior courts of this state.

This court has not seen fit to correct its previous errors but, on the contrary, added to the general confusion with its holding in the case under consideration. It is at once apparent from a glance at the signatures on the opinions in all of these cases that trial judges and attorneys are not the only ones who are confused as to the holdings in the Fox, Dexter and Flynn cases. Here, we have Mr. Justice Shenk, who signed Mr. Justice Traynor's opinions in the Fox, Dexter and Flynn cases, dissenting from his opinion herein. In passing, it should be mentioned that, in my opinion, Mr. Justice Shenk in his dissent correctly applies the rules set forth in the Fox and Flynn cases that the trial court could take extrinsic evidence in aid of its interpretation of the

agreement and that its conclusion based thereon was supported by the evidence and should not be disturbed on appeal.*

Civil Code, sections 158, 159 and 175, all authorize contracts between husband and wife. Under the statutory law it would be a very simple matter for this court to lay down understandable and workable rules of law applicable to agreements for property settlement, alimony, and support and maintenance in divorce and separate maintenance cases. Such rules would permit lawyers properly to advise their clients, would permit husbands and wives seeking divorce who are honestly and intelligently endeavoring to make a division of their property, and arrangements for support and maintenance, to do so without fear that such arrangements would be later changed by a trial, or an appellate court. There appears to me to be no sound reason why contracts between such parties should not, in the absence of fraud or overreaching, be given the same stability and dignity accorded to contracts entered into between persons not so related.

The rule of law I should like to see in effect in California in this type of case is very simple and easy of application. Where the parties have entered into an agreement for a division of their property, or where one has agreed to give, and the other to receive, periodic payments in lieu of a division of their property, or in conjunction with a division of their property, or for support and maintenance, or alimony, the agreement so entered into if approved by the court as fair, just and equitable and not the result of any fraud or overreaching, should be the sum total of the parties' rights and liabilities and should not be subject to modification unless the parties have expressly provided for a later modification, or unless a subsequent modifying agreement is executed by them.

In a divorce action, when the parties have entered into an agreement involving their property rights, the court should inquire into the facts surrounding the execution thereof to ascertain whether there has been any fraud or overreaching. The court should also inquire into the terms and provisions of the agreement to determine whether it is fair, just and equitable. When the court approves the contract as fair, just and equitable and determines that there has been no fraud

---

*In the Dexter case it should be remembered that the majority, while holding that the trial court could determine the character of the monthly payments involved, affirmed the trial court's action in sustaining defendant's objection to the introduction of evidence on that issue.

or overreaching, the matter should be forever concluded and the parties bound by the terms of their agreement.

Stated simply, the foregoing proposed rules mean only this: That the parties have entered into an agreement which the court has approved as fair and equitable and not the result of fraud or overreaching; that such agreement should be accorded the same finality and dignity as contracts entered into between strangers.

If the above rules were in effect in California, the problem of incorporation would also be a very simple one. In my opinion there is no incorporation of an agreement in a divorce decree unless that agreement has been copied therein *in haec verba*, or its substance is stated therein, or unless a copy of the agreement is attached physically to the decree of divorce and referred to as being a part thereof. When there has been an effective incorporation of the agreement in the judgment, the agreement is merged therein and the effect is to make the remedy one upon the judgment rather than by separate action on the agreement itself. Incorporation should have absolutely no effect so far as the parties' agreement is concerned. The agreement is a contract and its terms should govern. If the decree orders compliance with the terms of the agreement which has been incorporated in the judgment, the only result should be in the form of remedy available to the party seeking to enforce the judgment. (*Plummer* v. *Superior Court,* 20 Cal.2d 158 [124 P.2d 5].)

It is at once apparent that if the above rules had been applied in the instant case, we would not have the chaos and confusion here present. Here it is evident that the parties intended a *final* settlement of their property rights at the time the agreement was executed. The holding of the majority here destroys the effectiveness of the agreement solemnly entered into by the parties and leaves their property and rights in a state of uncertainty and confusion.

I would therefore reverse the judgment and order.

SHENK, J., Dissenting.—I am unable to agree with that portion of the opinion which holds that the alimony payments to the wife were integrated in the property settlement agreement and were therefore not subject to modification as provided in section 139 of the Civil Code.

A property settlement agreement should be construed as any other agreement. Here the parties were dealing at arm's

length and were represented by counsel in the preparation of the agreement. They are presumed to mean what they said in that instrument and the words they have used are to be taken in their ordinary and legal meaning. Here both meanings are the same. The problem in each case is to ascertain the intention of the parties by the language they have used. The parties set about to settle a "permanent and lasting" division of their "property rights" whether "separate or community." Permanent alimony payments do not fall within either category and as a general rule must be dealt with subject to the power of the court to modify them in accordance with the provisions of section 139 of the Civil Code. Where in the agreement there is a clear intention to waive them or to integrate and settle them as part and parcel of all marital and property rights, the right of the parties to so contract is recognized. Here, as properly found by the court, there was no such intention. The parties repeatedly and with obvious design used the word "alimony" in their agreement. That word ordinarily means an allowance made to the wife by her husband for her support after a dissolution of their marriage by divorce. It is used frequently in our statutes as incorporated in our official codes. For example, it is specifically employed in sections 137, 140 and 142 of the Civil Code. In our decisional law it has been used repeatedly in its ordinary sense. It must be assumed that it was used in its ordinary sense throughout this proceeding. It was first used by the parties in their agreement, which provides that the defendant shall pay to the plaintiff $500 per month as "alimony" for her "support and maintenance" and provides that these payments shall continue "until the wife dies or remarries." Then in her complaint for divorce the wife asked for an award of "alimony" in this same sum. She prayed that the property settlement agreement be approved and made a part of the decree and that the court order the defendant to pay her $500 per month for her care, maintenance and support "as therein agreed." The interlocutory decree approved the property settlement agreement and incorporated it by reference in the judgment and ordered that the defendant pay to the plaintiff $500 per month for her "care, maintenance and support . . . as agreed in said property settlement agreement . . . until the plaintiff dies or remarries. . . ." The word "support" as used in section 139 of the Civil Code of course means alimony. The final decree of divorce specifically states that "wherein

said interlocutory decree makes any provision for alimony . . . [it] is hereby made binding on the parties affected thereby as if herein set forth in full." Those decrees have long since become final.

The use by the parties and by the court of the descriptive and meaningful term and phrases "alimony," "care, maintenance and support" and "until the plaintiff dies or remarries" should not be disregarded and should be determinative in support of the findings and conclusions of the trial court in the present proceeding.

But this court now says, as a matter of law, that the parties did not mean what they said when they used the word "alimony" in their agreement, and that the trial court did not mean what it said in its divorce decrees, and that the findings and conclusions in the present proceeding are without support in the record. If the agreement was without ambiguity, as both parties contend, the trial court had the power in the first instance to declare from its language alone the intention of the parties, and its determination should not be set aside unless it is unreasonable. A construction of the agreement on that theory alone is reasonable. However, each party contends that the agreement is unambiguous in his or her favor, and this is one test of ambiguity. The fact that the parties themselves each ascribe different meanings to the words used indicates the existence of an ambiguity. (*Chastain* v. *Belmont,* 43 Cal.2d 45, 51 [271 P.2d 498]; *California Emp. Stab. Com.* v. *Walters,* 62 Cal.App.2d 554, 559 [149 P.2d 17].)

Notwithstanding her contention that the agreement is unambiguous in her favor the plaintiff at the hearing of the present proceeding requested the court to take extrinsic evidence to ascertain the intention of the contracting parties as to the alimony payments. In so doing she was met by the construction of the agreement in the prior divorce proceedings to the unmistakable effect that alimony was not integrated in the agreement. However in compliance with her request the trial court took extrinsic evidence. This it had the right to do in aid of the interpretation of the agreement when ambiguity is present or questionable. (*Tuttle* v. *Tuttle,* 38 Cal.2d 419, 421 [240 P.2d 587]; *Flynn* v. *Flynn,* 42 Cal.2d 55, 60 [265 P.2d 865]; *Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881].)

Having before it the terms of the agreement, the divorce decrees and the extrinsic evidence, the trial court found and

concluded that alimony as such was not intended to be integrated in the agreement and was not affected by the provision therein waiving "all right to future maintenance and support . . . except as herein otherwise provided." The exception could have reference only to the alimony which is "otherwise provided." In my opinion the record fully supports the findings and the conclusion of the trial court that the alimony payments were modifiable.

I would affirm the judgment.

SCHAUER, J., Dissenting.—Husband and wife are as free as other competent persons to contract with each other. (Civ. Code, §§ 158, 159.) There is no reason why they cannot enter into a property settlement agreement which includes a provision for alimony, as such, which shall be subject, within agreed limits, to control by the court. For example, the parties could agree to a maximum limit or to a minimum limit or to both maximum and minimum limits, or they could include a cost-of-living sliding scale, the exact amount of contributions in each case to be fixed by the court if the parties failed to agree. They could also provide for security to guarantee maximum payments or they could agree that the court might order complete termination of alimony upon the showing of the occurrence of some casualty.

A contract made by competent parties, and valid under the law of contracts, does not for some mysterious reason become subject to alteration in or disregard of its terms merely because the contracting parties are or were husband and wife. But when the contract by its terms provides for the payment of alimony the ordinary meaning of the word suggests that the amount of alimony shall remain subject to control of the court unless that primary meaning is expressly negated or limited by the contract. Changing the amount of alimony payments obviously is not an alteration of the contract where the contract provides for "alimony" and does not prohibit such changes.

Here, I cannot hold that as a matter of law the contract is not subject to the interpretation given it by the trial court. That contract was not in truth made a part of the decree of divorce. The majority opinion states that "The decree approved and *incorporated by reference* the provisions of the agreement and expressly ordered defendant to pay $500 per month 'as agreed in said property settlement agreement.' " (Italics added.) But, as I have heretofore pointed out

(*Flynn* v. *Flynn* (1954), 42 Cal.2d 55, 61-62 [265 P.2d 865]), the simple fact is that an agreement cannot be made a part of a judgment unless it is in truth incorporated in the judgment so that when the judgment is copied in the judgment book the whole of the judgment, necessarily including the agreement which is a part of it, is set forth word for word.

" 'In no case is a judgment effectual for any purpose until entered.' (Code Civ. Proc., § 664.) To enter a judgment means to copy it in the 'judgment book' so that it becomes a permanent and public record (see Code Civ. Proc., § 668), so that he who reads may know its content. Any portion of a judgment not entered in the judgment book would be ineffectual for any purpose. If the clerk by error omitted to enter any part of a judgment which had been filed, the error of the ministerial officer could be corrected; but if he has performed his duty and the judgment as entered is truly the judgment as rendered, and that judgment has become final, then neither this court nor any other court or person has power to add words to the language of that judgment." (*Flynn* v. *Flynn, supra.*)

Inasmuch as the agreement was not incorporated in the decree, the trial court's determination in the light of the entire record that the order for payment of $500 monthly was in the nature of an award of alimony, should be upheld.

I would affirm the judgment.