[Civ. No. 28398. Second Dist., Div. Three. July 6, 1966.]

ALICE A. PEIRCE, Plaintiff and Appellant, v. JOHN M. PEIRCE, Defendant and Respondent.

Boyle, Atwill & Stearns, and James B. Boyle, Jr., for Plaintiff and Appellant.

Roland Maxwell and Frank G. Prantil for Defendant and Respondent.

FRAMPTON, J. pro tem.*—This is an appeal from an order modifying an interlocutory decree of divorce.

The plaintiff and defendant were married on June 18, 1929. They lived together as husband and wife until December 8, 1951, at which time they separated. There were two children born the issue of the marriage.

On June 2, 1953, the plaintiff filed an action for divorce in which she charged that the defendant had wrongfully inflicted grievous mental suffering upon her.

Paragraph IV of the complaint alleged in substance that the parties entered into a property settlement agreement disposing of their community property and providing for alimony for the support and maintenance of the plaintiff and providing for the living expenses and the expenses of the education of one of the children of the parties who was then a minor. The prayer of the complaint asked that the court approve the property settlement agreement and make it a part of any decree rendered therein.

The action was tried as a default upon the plaintiff's complaint, and an interlocutory decree was entered therein on August 6, 1953. A final judgment of divorce was entered, upon the plaintiff's motion, on August 24, 1954.

The interlocutory decree ratified and confirmed the property settlement agreement, a signed copy of which was incorporated in, and made a part of, the decree. No appeal was taken from the interlocutory decree and its provisions with respect to the distribution of the community property, alimony and child support, became final subject to the right of modification, upon a proper showing, of those provisions relating to alimony and child support, unless it can be said that the provisions of the agreement with respect to the division of the community property and the payment of alimony were integrated.

The property settlement agreement bears the date of May 29, 1953. The second paragraph of the preamble thereof recites that: "WHEREAS, the parties desire to divide their community estate and to determine all property rights between them and

_____
*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

to provide for the maintenance and support of Wife, Now, THEREFORE, IT IS AGREED as follows:''

Paragraph I warrants the full disclosure of all property of each to the other. Paragraph II lists the community property, both real and personal, of the parties. Paragraphs III and IV divide the community property between the plaintiff and the defendant. In the division of the community property the wife received the family residence, free and clear of encumbrances, valued at $22,500, together with the household furniture and furnishings therein except a few minor items which were reserved to the husband. She also received securities of the value of approximately $13,000, a Chevrolet four-door sedan, and the sum of $1,500 in cash. In addition to the foregoing, the husband agreed to maintain, for so long as the wife lived or until she remarried, four life insurance policies upon his life and to maintain the wife as the beneficiary thereunder. The face value of these policies amounts to the sum of $20,000 and the total annual premium thereon amounts to approximately $500. The property settlement agreement shows the parties to have been possessed of $5,445 in cash on deposit in two bank accounts. It is not made clear how this money was divided as the property settlement agreement awards to the wife all cash and bank accounts which were in her name or which were in her possession or under her control. There was a similar provision as to the husband which related to cash and bank accounts which were in his possession or under his control. It is clear from the foregoing that the wife received a very substantial share of the community assets as compared to what the husband received. The husband also became obligated to pay the sum of $500 as and for the wife's attorneys' fees. He further agreed to pay all income taxes, both state and federal, for the year 1952 and all prior years during the period of the marriage.

Paragraph X of the property settlement agreement provides that ''The parties shall upon the effective date hereof transfer, assign, waive and forever quitclaim one to the other all of their right, title, claim or interest in or to any property, real or personal, community or separate, wherever situated, herein granted, assigned or transferred, one to the other, or which either party in the future may own, control or possess, and the same and every portion thereof shall be and become the separate estate of the party acquiring or possessing the same to convey, assign or deal with as though he or she were single.''

There are no provisions in the property settlement agreement whereby the wife waived her right to support other than,

or in addition to, that provided in view of the premises and in consideration of the transfer to her of that portion of the community property hereinabove referred to, as was the case in *Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265], and *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873].

On the contrary, paragraph XV of the property settlement agreement provides that: ''This agreement shall be submitted to the court in any hearing in the divorce action now pending or in any divorce action which either party may hereafter institute and the same shall be made a part of any decree rendered in such action and the parties by the terms of such decree shall be ordered to do and perform all things to be done by them under the terms hereof. Any decree in such action shall specifically provide that the payments of $600.00 per month herein provided to be made to Wife are made to her by way of alimony for her support and maintenance and not by way of settlement of property rights.''

The last paragraph of the interlocutory decree, pursuant to the agreement of the parties, contains the following: ''IT IS FURTHER ORDERED that the payments to be made to Wife pursuant to the provisions of paragraph VI thereof [the property settlement agreement] are by way of alimony for her support and maintenance and not for property settlement.''

''When an order for support payments in a divorce decree is based on an agreement of the parties, the possibility of subsequent modification of the order without the consent of both parties depends on the nature of the agreement. Prior to *Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265], the cases attempted to classify all separation agreements either as 'property settlement' agreements or as 'alimony' or 'support and maintenance' agreements. (*Ettlinger* v. *Ettlinger*, 3 Cal.2d 172, 177-179 [44 P.2d 540]; *Puckett* v. *Puckett*, 21 Cal.2d 833, 841-842 [136 P.2d 1]; *Hough* v. *Hough*, 26 Cal.2d 605, 614-615 [160 P.2d 15].) If the underlying agreement was a 'property settlement' agreement, the 'support' order could not be modified without the consent of the parties. (*Ettlinger* v. *Ettlinger*, *supra*, 3 Cal.2d at 177-178.) Conversely, if the underlying agreement was for 'alimony' or 'support and maintenance,' the support order was modifiable upon a showing of changed circumstances. (*Hough* v. *Hough*, *supra*, 26 Cal.2d at 612.) In *Adams* v. *Adams*, *supra*, 29 Cal.2d at 624-625, and in *Dexter* v. *Dexter*, 42 Cal.2d 36, 41 [265 P.2d 873], we recognized that hybrid agreements to settle not only property rights but rights and duties as to support are *sui generis*.

"The parties are free to limit their agreement to property rights. They may, for example, agree to a simple division. Or they may agree that one party is to receive the lion's share of the marital property and the other money payments, not in satisfaction of a statutory right to support, but solely to equalize the division of the marital property; such an agreement is a true property settlement unconcerned with rights and duties as to support. The court, therefore, may approve the agreement and in addition order the payment of alimony (*Adams* v. *Adams, supra*, 29 Cal.2d at 625), and such an order is subject to modification on an adequate showing of changed circumstances. (Civ. Code, § 139.)

"The parties are likewise free to limit their agreement to their rights and duties as to supprt. They may, for example, agree that the wife will receive specified money payments in lieu of the statutory right to support. Such an agreement is a true 'alimony' or 'support and maintenance' agreement, and under the rule of *Hough* v. *Hough, supra*, 26 Cal.2d 605, 612, a support order based thereon is modifiable on an adequate showing of changed circumstances.

"Frequently, however, the parties enter into a hybrid agreement as in the Adams and Dexter cases and in *Messenger* v. *Messenger*, 46 Cal.2d 619 [297 P.2d 988]. The possibility of modifying an order for support based on such an agreement without the consent of the parties, depends upon whether the provisions for division of property and the provisions for support are severable rather than integrated. If they are integrated the order may not be modified unless the parties have provided for or agreed to such a modification. (*Dexter* v. *Dexter, supra*, 42 Cal.2d at 40.)

"An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the parties. (*Dexter* v. *Dexter, supra*, 42 Cal.2d at 41-42; *Messenger* v. *Messenger, supra*, 46 Cal.2d at 626, 627-628; *Herda* v. *Herda, ante*, pp. 228, 231-232 [308 P.2d 705].) It is immaterial whether or not the marital property is divided equally. (*Dexter* v. *Dexter, supra*, 42 Cal.2d at 43; *Messenger* v. *Messenger, supra*, 46 Cal.2d at 627-628.) It is immaterial that the amount of the marital property is small. (*Herda* v. *Herda, supra, ante*, at p. 232.) It is likewise immaterial that the agreement calls for

payments for 'support' or 'alimony.' (*Messenger* v. *Messenger, supra,* 46 Cal.2d at 624-625 and cases there cited.)'' (*Plumer* v. *Plumer,* 48 Cal.2d 820, 823-825 [313 P.2d 549].)

On October 25, 1963, the defendant filed his declaration in support of an order to show cause why the provisions of the interlocutory decree of divorce relating to the payment of $600 per month to the plaintiff for her support should not be modified. In this proceeding the defendant sought to have the support payments reduced from $600 per month to $200 per month. After hearing, the court entered its order reducing the payment to $300 per month. The appeal is from this order.

The plaintiff urges two grounds upon which she contends that the order below should be reversed. They are that (1) ''The Property Settlement Agreement Entered Into Between the Parties and Made a Part of the Interlocutory Judgment of Divorce Was an 'Integrated Bargain' Type of Agreement, and the Court Therefore Lacked the Power to Subsequently Modify its Terms,'' and if it should be found that the property settlement agreement is not an integrated settlement of their property rights then (2) ''The Trial Court's Reduction of the Monthly Payments to Be Paid by Respondent to Appellant for Appellant's Future Support and Maintenance Was an Abuse of Sound Discretion.''

The property settlement agreement in the case at bench is a nonintegrated agreement. It is clear from the provisions of paragraph XV thereof that the parties intended the $600 per month agreed to be paid to the wife was by way of alimony for her support and was not by way of the settlement of the property rights of the parties. We find nothing in the agreement which would tend to modify this language or which would lead to a different conclusion. It has been said that : ''It is often difficult to determine, in a contract containing provisions for division of property and payments of 'support and maintenance,' whether the payments are part of the division of property or are in the nature of alimony. 'It would be better practice to have that determination clearly and concisely made by the trial court when it renders the decree of divorce. Considerable confusion and uncertainty could be avoided in that fashion. The court could examine the agreement, the circumstances under which it was made, and the nature and value of the property as related to its division and the amount of the periodic payments, giving consideration to the statutory rules on the subject.' '' (*Adams* v. *Adams, supra,* at p. 625.)

Here, the trial court made the determination of the nature of the property settlement as was suggested in *Adams* and incorporated such determination in the interlocutory decree of divorce. That determination, as shown by the record, was that the payments to be made to the wife pursuant to the provisions of paragraph VI of the property settlement agreement were by way of alimony for her support and maintenance and were not made by way of the settlement of her property rights. This determination is now *res judicata.* (*Wunch* v. *Wunch,* 184 Cal.App.2d 527, 531, 532 [7 Cal.Rptr. 551]; *Leupe* v. *Leupe,* 21 Cal.2d 145, 148 [130 P.2d 697].)

The provisions of the property settlement agreement incorporated in the decree relating to the payments to be made to the plaintiff for her support not being a part of an integrated property settlement agreement were subject to modification upon a proper showing of a change in the conditions surrounding the plaintiff or the defendant different from what they were at the time the interlocutory decree of divorce was rendered. (Civ. Code, § 139.)

The record discloses that the plaintiff, at the time she filed her action for divorce, was 52 years of age. At that time she held and still holds a certificate which qualifies her to teach in the elementary schools. She stopped teaching school in 1929, the year in which she was married. Since the divorce she has made no effort to find employment nor has she been employed in any occupation. The record does not disclose that she has been physically or metally incapacitated to work. Since the interlocutory decree she has received from the defendant by way of support and maintenance approximately $75,600. At the time of the hearing on the order to show cause she owned a duplex, built in 1954 and which she valued at $50,000. She occupied one unit of this duplex as her residence and rented the other unit for the sum of $250 per month. She had $1,800 on deposit in a savings and loan account and approximately $400 on deposit in a checking account. She owns securities of a value of approximately $16,000 from which she receives an income of about $47 per month. She also owned a 1961 Chevrolet automobile. The income from the duplex does not show a net profit by reason of maintenance and depreciation charges. She paid $35,000 for the duplex and the present value of the property is reflected in the general rise of real estate values in the area of its location. The two children of the marriage were adults at the time of the divorce and for this reason no provision was made for their support and maintenance in the inter-

locutory decree. Plaintiff testified that her average monthly expenses were approximately $669.

The defendant testified that at the time of the divorce he earned a salary of $25,000 per year. On November 1, 1953, he obtained employment with the State of California at a salary of $17,500 per year which was increased to $21,000 per year in July 1954. He held his state employment until July 15, 1958, at which time he resigned therefrom and took a position with the Bay Area Rapid Transit District. His salary at the time of his resignation from the state position was $27,500 per year. His take home pay from his position with the Bay Area Rapid Transit District, at the time of the hearing on the order to show cause, was approximately $1,700 per month.

The defendant has remarried and is living with his present wife in an apartment for which he pays $210 per month as rent. He was 61 years of age at the time of the hearing on the order to show cause. He will be eligible to retire from his present employment at the age of 65 years, at which time he will be entitled to receive a retirement benefit of approximately $550 per month plus a modified social security benefit, the amount of which is not disclosed. It will be mandatory for him to retire from his present employment at the age of 70 years. His normal living expenses are approximately $1,000 per month. He still maintains $20,000 in life insurance on his life with the plaintiff herein named as the beneficiary in the policies of insurance. The premiums on these policies cost approximately $500 per year.

At the time of the hearing on the order to show cause the defendant owned a Ford Falcon automobile, and the furniture in the apartment in which he and his present wife live. He has $6,000 in a savings account and approximately $2,500 in a checking account, he also has $5,500 in a savings and loan account and about $5,000 in bonds. He owns common stock of a value of approximately $27,000. He owns an undivided one-half interest in real property situated in the City of Azusa, California, which has an appraised value, for the whole property, of approximately $46,000. He had also owned, jointly with his brother, two lots which had been recently sold for the sum of $6,500. It is not clear whether or not his one-half interest in the proceeds from the sale of these lots is reflected in the cash balances shown above on deposit in his bank accounts. The above mentioned real property and the sum of $15,000 in cash were received by the defendant as an inheritance from the estate of his father.

His present wife has a one-half interest in most of the above mentioned property and the defendant has no life insurance other than that mentioned above in which the plaintiff is the beneficiary.

It is settled (1) that on factual issues an appellate court must view the record in the light most favorable to the party who was successful in the trial court; (2) that an abuse of discretion is never presumed and it must be affirmatively established, and (3) that a modification of an award pursuant to section 139 of the Civil Code rests within the sound discretion of the court, and its order may not be set aside without a clear showing of an abuse of discretion. (*Zimmerman* v. *Zimmerman*, 192 Cal.App.2d 407, 409 [13 Cal.Rptr. 308].)

Without going into a detailed summary of the figures presented to the trial court it is apparent that the plaintiff's financial situation has improved some since the divorce. The defendant has paid her, under the terms of the interlocutory decree, for her support and maintenance up to the date of the order modifying such decree a sum in excess of $75,000. Under the terms of the order modifying the interlocutory decree he is obligated to continue to pay to the plaintiff as and for her support and maintenance the sum of $300 per month. The latter sum, coupled with her other income from rentals and dividends, comes to within $52 of the plaintiff's average monthly expenses. No reason is given as to why she could not rent the unit of the duplex in which she is living and move into cheaper quarters and thus supplement her income by this additional revenue. The trial court may have considered that plaintiff could have sought and obtained gainful employment during the 10 years since the divorce or that she could do so now.

The testimony also disclosed that the defendant had faithfully performed all of the obligations imposed upon him by the interlocutory decree of divorce. That after an allowance for his living expenses and the payments of $600 per month to the plaintiff there was left to him from his take home pay the net sum of approximately $100 per month. The record also shows that the defendant was within four years of the age at which he could retire from active work and that upon such retirement his income would be drastically reduced.

The plaintiff urges that the defendant should be compelled to continue the payment of $600 per month as and for her support and maintenance until he reaches the age of compulsory retirement, that is 70 years of age, and that the trial court abused its discretion in reducing such payments prior to

that time. The trial court, however, was not obligated to adopt this view. Under all of the circumstances here shown we can not say that the trial court, in making its order reducing the amount of the support payments to the plaintiff, abused its discretion.

The order is affirmed.

Shinn, P. J., and Ford, J., concurred.