[Civ. No. 41908. First Dist., Div. Four. July 26, 1978.]

In re the Marriage of BEVERLY MAE and MARSTON BARNES, JR.
BEVERLY MAE BARNES, Appellant, v.
ELEANOR BARNES, Respondent.

**COUNSEL**

Harland & Gromala and David C. Moore for Appellant.

Sapper, Stone & Hanson and Sam L. Stone for Respondent.

**OPINION**

**RATTIGAN, J.**—Probate Code section 205 provides that a surviving spouse is personally liable for the debts of his or her deceased spouse

which are chargeable against their community property.[1] This appeal involves problems presented when a decedent's former wife invoked the statute, to collect unpaid spousal support due her under a judgment which had dissolved their marriage, by obtaining a writ of execution on the judgment and having it levied on the community property of the decedent and his second wife.

In or before 1969, Marston Barnes (hereinafter Marston) brought an action for the dissolution of his marriage to Beverly Mae Barnes (Beverly). A judgment of dissolution, entered in 1969, ordered him to make monthly payments of money to Beverly as spousal support. He subsequently married Eleanor Barnes (Eleanor). He died on November 25, 1976, leaving Eleanor as his surviving spouse. The events next recited occurred in 1977.

On January 19, Beverly filed in the dissolution action a declaration entitled "Declaration In Support Of *Motion* For Issuance Of Writ Of Execution" (italics added) and a memorandum of points and authorities. In the declaration, she alleged the substance of the 1969 judgment and as follows: As of the date of Marston's death, he owed her more than $9,000 in back spousal support payments pursuant to the judgment. When he died, he had left Eleanor in possession and control of his and her (Eleanor's) community property assets. Eleanor had not since "filed any

---

[1]As pertinent, the statute provides:

"205. (a) . . . [U]pon the death of a married person, the surviving spouse is personally liable for the debts of the deceased spouse chargeable against the community property by the provisions of Title 8 (commencing with Section 5100) of Part 5 of Division 4 of the Civil Code, unless the interests of both spouses in the community property are administered under Division 3 (commencing with Section 300). The personal liability shall not exceed the value at the date of death, less the amount of any liens and encumbrances, of the interest ·of the surviving spouse in the community property immediately prior to the death which is not exempt from execution plus the interest of the deceased spouse passing to the surviving spouse without administration.

"(b) If proceedings are commenced in this state for the administration of the estate of the deceased spouse and notice to creditors has been given by the personal representative, any action upon the liability of the surviving spouse pursuant to subdivision (a) shall be barred to the same extent as provided for claims under Article 1 (commencing with Section 700) of Chapter 12 of Division 3 except as to the following: (1) Creditors who had commenced judicial proceedings for the enforcement of the debts and had served the surviving spouse with process prior to the date of the last publication of the notice to creditors. (2) Creditors who secure the acknowledgment in writing of the liability of the surviving spouse for the debts. (3) Creditors who file a timely claim in the proceedings.

"(c) Except as provided by subdivision (b), any debt described in subdivision (a) may be enforced against the surviving spouse in the same manner as it could have been enforced against the deceased spouse if the deceased spouse had not died. In any action based upon the debt, the surviving spouse may assert any defenses, counterclaims, or setoffs which would have been available to the deceased spouse if the deceased spouse had not died."

proceeding" to have these assets "administered under Division 3 (commencing with Section 300) of the Probate Code." Beverly requested in the declaration that a writ of execution be issued in the amount due her. The memorandum cited Probate Code section 205, subdivisions (a) and (c), as the basis for the writ. (See fn. 1, *ante.*)

Despite the reference in the caption of the declaration to a "motion" by Beverly for the requested writ of execution, she did not notice a "motion" as such. She did not serve Eleanor with the declaration, the memorandum, or any notice of her application for the writ. The clerk of the court nevertheless issued the writ when the documents were filed in his office on January 19, and they did not reach the attention of the court at that time.[2]

On January 20, a constable levied the writ of execution on an automobile in Eleanor's possession. On January 28, she filed in the dissolution action a "Claim Of Exemption" in which she asserted that the automobile was exempt from execution pursuant to section 690.50 of the Code of Civil Procedure, and notice of a motion by her (Eleanor) for an order quashing the writ upon the stated ground that she was "not a judgment debtor" of Beverly nor "a party to any action" involving Beverly; and a declaration in support of the motion to quash.

Beverly filed a declaration in opposition to Eleanor's claim of exemption, notice of a motion for its determination, and opposition to Eleanor's motion to quash.

These matters were heard together on February 14. The record does not indicate that the court received any further evidence on Eleanor's motion to quash, nor that it acted upon any of the pending matters except that motion. In a memorandum decision ("Ruling . . .") deciding it, filed on February 17, the judge observed that the writ of execution had been issued "not based upon any court order that it issue but merely the ministerial act of the clerk." (See the text at fn. 2, *ante.*) He continued as follows:

". . . [T]he writ of execution . . . must be quashed *pending proceedings to establish the liability as the liability of the surviving spouse.* Probate Code § 205 is a relatively new code section and clearly provides for the personal liability of the surviving spouse under conditions such as exist

---

[2]As will appear, the court later commented on the fact that the clerk had issued the writ on his own. The parties also agreed, at oral argument, that this occurred.

here (where there has been no administration of [the] decedent's estate). However . . . , prior to levying, *action should be brought against the surviving spouse* to establish the debt as a judgment debt. While the section itself makes no reference to such action, CCP § 353.5 would appear to contemplate the bringing of an action in order to establish the debt;[3] and it would appear . . . proper that *some proceeding* be brought to establish the liability, even though . . . [Probate Code section 205] . . . makes reference to the fact that the surviving spouse is personally liable. The motion to quash is granted." (Italics added.)

On February 25, the court made a formal order in which it again stated that Eleanor's motion was granted, quashed and recalled the writ of execution, and vacated the levy made on January 20.

On March 10, Beverly applied to the court for an order requiring Eleanor to appear and show cause why a writ of execution should not issue as originally requested. He declined to sign it in the absence of the separate "action" or "proceeding" which he had deemed necessary as stated in the memorandum decision of February 17 (quoted *ante*).[4]

After her application for the order to show cause had been denied on March 10, Beverly filed a notice of appeal. The notice states that the appeal is taken from the February 17 "Ruling," which is not appealable. (Code Civ. Proc., § 904.1; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal [hereinafter cited as "6 Witkin" only], §§ 62 [p. 4077], 69 [p. 4083].) The order entered on February 25 is appealable as an order quashing a writ of execution. (*Stegge* v. *Wilkerson* (1961) 189 Cal.App.2d 1, 4 [10 Cal.Rptr. 867]; see *Lovret* v. *Seyfarth* (1972) 22 Cal.App.3d 841, 853 [101 Cal.Rptr. 143].) Construing the notice accordingly, we treat the appeal as having been taken from the formal order. (Rule 1(a), Cal. Rules of Court; *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59-60 [10 Cal.Rptr. 161, 358 P.2d 289]; 6 Witkin, § 336, pp. 4313-4315.) We may nevertheless examine the "Ruling" to ascertain the reasons for the order. (6 Witkin, § 231, pp. 4221-4222.)

---

[3]Code of Civil Procedure section 353.5 provides: "If a person against whom an action may be brought dies before the expiration of the statute of limitations for the commencement of an action and the cause of action survives, an action against the surviving spouse of the person which is brought pursuant to Section 205 of the Probate Code may be commenced within four months after the death of the person or before the expiration of the statute of limitations which would have been applicable to the cause of action against the person if the person had not died, whichever occurs later."

[4]The judge's refusal to sign the proposed order, and his reasons, were indicated in this notation made on its face by the clerk: "Judge won't sign. Not a proper order. See Ruling of 2/17. Writ of execution matter should be a separate case # [*sic*] and proceeding."

Although our jurisdiction to consider the appeal has thus been established, we have also encountered facts which relate to the necessity of doing so. Beverly has now filed a separate action against Eleanor to enforce the personal liability of the latter, on the 1969 judgment, pursuant to Probate Code section 205. Beverly alleged in that action that no probate proceeding had been commenced for the administration of Marston's estate. Eleanor subsequently commenced such proceeding, and Beverly filed a creditor's claim in it for unpaid spousal support due her under the 1969 judgment.[5]

These events demonstrate that Beverly has effectively abandoned the objective of enforcing the 1969 judgment by execution upon it in the dissolution action, and they give us cause to dismiss the appeal as moot. (6 Witkin, § 462, p. 4418.) We nevertheless recognize that Probate Code section 205 has been recently enacted as part of a major legislative program reforming the law of community property in general. (See Kahn & Frimmer [various titles], 49 State Bar J. 517; 50 State Bar J. 42; 50 State Bar J. 260.) This appeal presents procedural problems attending the enforcement of the new statute in a recurrent factual situation, and other courts will be required to resolve them if we do not. We therefore decline to treat the appeal as moot, and proceed on its merits. (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 465 [125 Cal.Rptr. 129, 541 P.2d 881]; *Montalvo* v. *Madera Unified Sch. Dist. Bd. of Education* (1971) 21 Cal.App.3d 323, 329 [98 Cal.Rptr. 593].)

The parties apparently agree that Marston's court-ordered obligation to Beverly for spousal support is a "debt" which is "chargeable against the community property" of his marriage to Eleanor within the meaning of Probate Code section 205, subdivision (a). This is true except for any noncommingled earnings of Eleanor after the marriage. (See Civ. Code, § 5120; *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 562-563 [63 Cal.Rptr. 13, 432 P.2d 709].)

The parties also agree that no probate proceeding for the administration of Marston's estate was commenced before or during the procedural sequence described above. ▇ This meant that subdivision (b) of Probate Code section 205 had no application at any time pertinent to the appeal, and that subdivision (c) accordingly entitled Beverly to enforce the 1969 judgment against Eleanor "in the same manner" as she (Beverly) might have enforced it against Marston if he were alive. The "same

---

[5]These events were made known to us in the briefs and in subsequent correspondence with counsel. They are not disputed.

manner," in this case, unmistakably includes enforcing the judgment by writ of execution. (Civ. Code, § 4380.)[6] Subdivision (c) thus expands the availability of the writ in any case involving a money judgment, a deceased judgment debtor whose estate is not under administration, and a surviving spouse. (See Code Civ. Proc., § 686;[7] *Stanley* v. *Westover* (1928) 93 Cal.App. 97, 101 [269 P. 468]; *Bank of America* v. *Katz* (1941) 45 Cal.App.2d 138, 139-140 [113 P.2d 759].)

■ However, Eleanor's personal liability under Probate Code section 205 is limited to the net value of the "chargeable" community property as determined pursuant to the formulary provisions appearing in the last sentence of subdivision (a) of the statute. It may be limited further, or eliminated, by any "defenses, counterclaims, or setoffs" which are available to her as provided in its subdivision (c). These contingencies qualified Beverly's entitlement to a writ of execution *as a matter of right,* and a broadside writ should not have been issued without a judicial inquiry into the extent of Eleanor's personal liability (if any) and the prospect of her asserting "defenses, counterclaims, or setoffs" against it.

The trial court apparently perceived the necessity of such inquiry, but concluded in its memorandum decision (1) that Beverly was required to resort to a separate action for the purpose and (2) that she was otherwise not entitled to a writ of execution. ■ A separate action was not necessary "to establish the debt as a judgment debt," as the court put it, because this was made clear by the record in the dissolution action and by Beverly's uncontradicted declaration. Code of Civil Procedure section 353.5 does not support the court's first conclusion because it is limited by its terms to an "action" brought against a surviving spouse on a "cause of action" which has not been reduced to judgment. (See fn. 3 and the accompanying text, *ante.*) Probate Code section 205 supports neither conclusion because it does not require or refer to its enforcement by a separate action against a surviving spouse reached by it, and because its subdivision (c) clearly imports that a judgment creditor is entitled to a

---

[6]Civil Code section 4380 provides: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court *by execution,* the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." (Italics added.) Because the reference to "this part" is to part 5 of the Civil Code, it reaches a "judgment, order, or decree" for spousal support entered pursuant to section 4801, subdivision (a), thereof.

[7]"686. Notwithstanding the death of a party after the judgment, execution thereon may be issued, or it may be enforced, as follows: 1. In case of the death of the judgment creditor, upon the application of his executor or administrator, or successor in interest; 2. In case of the death of the *judgment debtor,* if the judgment be for the recovery of real or personal property, or the enforcement of a lien thereon." (Italics added.)

writ of execution against the surviving spouse in an appropriate case. We therefore disagree with both conclusions.

The necessary inquiry could have been conducted upon Beverly's application for the writ of execution in the dissolution action. Had it occurred in the full dimensions indicated, the trial court might have determined that the circumstances permitted a writ to issue for an appropriate amount. (See Code Civ. Proc., §§ 682, 682.1.) The amount would be measured, not by the sum claimed to be due Beverly under the 1969 judgment, but by the net value of the community property in Eleanor's possession. (See Prob. Code, § 205, subd. (a).) The court might have reached the alternative determinations that the circumstances permitted no writ at all, or that a separate action was in fact required for whatever valid reason Eleanor was able to show. (See *id.*, subd. (c).)

The trial court did not reach the threshold of the requisite inquiry, in the first instance, because Beverly's attorney did not apprehend its necessity when he presented her application to the clerk. Neither did the clerk, who issued the writ ministerially. (See the text at fn. 2, *ante.*) The application should have been presented to the court for the exercise of judicial discretion at that time. (See Civ. Code, § 4380 [quoted in fn. 6, *ante*]; *Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988]; *Wyshak* v. *Wyshak* (1977) 70 Cal.App.3d 384, 390-391 [138 Cal.Rptr. 811]; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 172, p. 5042; 5 Witkin, Cal. Procedure, *op. cit. supra,* Enforcement of Judgment, § 69, pp. 3443-3444.)

We may assume that the court would have exercised its discretion, in the first instance, by denying Beverly's ex parte application and requiring that she apply for the writ of execution by formal motion made upon notice to Eleanor. (See *Messenger* v. *Messenger, supra,* 46 Cal.2d 619 at p. 630; *Bryan* v. *Bryan* (1967) 255 Cal.App.2d 833, 841 [63 Cal.Rptr. 612].) It follows that Beverly should have proceeded by noticed motion at the outset. Probate Code section 205 presents an affected surviving spouse with unusual circumstances. They are not quite covered by the conventional remedies of a third party claim or a motion to quash. (See Code Civ. Proc., §§ 689-689.5; 5 Witkin, Cal. Procedure, *op. cit. supra,* Enforcement of Judgment, §§ 104-108 [pp. 3469-3476], 85-87 [pp. 3454-3455].) Nothing in the statute commands the conclusion that the surviving spouse should suffer an actual levy before having notice of a creditor's intentions.

The trial court had an opportunity to conduct the necessary inquiry when the pertinent issues finally reached it on Eleanor's motion to quash. The inquiry was not conducted because of the court's erroneous view that Beverly was required to resort to a separate action. The court was nevertheless warranted in quashing the writ because the clerk had improvidently issued it without any judicial discretion having been exercised. (See 5 Witkin, Cal. Procedure, *op. cit. supra,* Enforcement of Judgment, § 85, p. 3454.) We may affirm the order for that reason. (See 6 Witkin, § 226, pp. 4215-4216.)

The trial court had still another opportunity to set the appropriate inquiry in motion when Beverly finally applied to it for an order to show cause on March 10, but this application was denied. (See fn. 4, *ante.*) That denial is not reviewable on the present appeal because it was made after the order quashing the writ was entered. (6 Witkin, § 220, pp. 4210-4211.)

The order quashing the writ of execution is affirmed.

Caldecott, P. J., and Paik, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.